UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| HANNIBAL BURESS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-23078-SCOLA |
| | ) | |
| v. | ) | |
| | ) | The Hon. Robert N. Scola, Jr. |
| CITY OF MIAMI, *et al.*, | ) | Magistrate Judge Jonathan Goodman |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO MOTIONS *IN LIMINE***

Plaintiff Hannibal Buress, by his undersigned attorneys, replies to Defendants' response to Plaintiff's motions *in limine* as follows:

1. **Plaintiff's Prior Arrests Are Dissimilar to This False Arrest, Have No Probative Value to Damages, and Will Cause Undue Prejudice**

At issue are four misdemeanor arrests from between 1998 and 2009—two of which occurred when Plaintiff was a minor. Defendants argue that this criminal history should be admitted for the purpose of reducing Plaintiff's damages, asserting that "[b]ecause Plaintiff has brought a false and retaliatory arrest claim, and related claims under state law, Plaintiff's prior arrests can be used to refute his contention that he suffered garden variety emotional and/or psychological harm due to sitting in a holding cell and/or being transported to the Miami-Dade County Jail." Def. Resp. at 1-2. But this evidence sheds no light on the damages Plaintiff suffered when the Defendant Officers wrongfully arrested him as an adult who is also a public figure. Nor does Plaintiff's current false arrest claim automatically open the door to evidence of past arrests. *See Smith v. Balt. City Police Dep't*, 840 F.3d 193, 203 (4th Cir. 2016) (finding abuse of discretion in admitting criminal history to determine damages in false and unlawful arrest case because "the district court did not determine whether the three prior arrests involved

1

conduct remotely similar to the arrest in this case"). To admit Plaintiff's criminal history for this limited purpose, Defendants must demonstrate that Plaintiff's prior arrests are substantially similar to the arrest at issue and that their probative value outweighs the risk of prejudice. *See Monroe v. Griffin*, No. 14-cv-00795-WHO, 2015 WL 5258115, at *2 (N.D. Cal. Sep. 9, 2015) ("[C]ourts have also recognized that prior arrests and incarcerations may only be admitted for the purpose of countering a section 1983 plaintiff's emotional distress damages claim where they are substantially similar to those at issue, and where the court conducts a prejudice analysis under Rule 403") (collecting cases). Defendants have not met this burden.

First, Plaintiff's prior arrests did not involve similar conduct, nor have Defendants presented any evidence that they did. *See Brandon v. Maywood*, 179 F. Supp. 2d 847, 855 (N.D. Ill. 2001) (granting motion to exclude criminal history because "there is no indication that either of [plaintiff's] previous arrests involved similar facts, so their probative value is quite low"). The arrests here concern reckless driving, possessing a stolen bicycle and disorderly conduct in college, as well as being questioned for running from the police as a teenager (if it even was an arrest). None of these experiences are remotely similar to this case where Defendant Officers *inter alia*, harassed Plaintiff, arrested him in retaliation for protected First Amendment speech, and failed to intervene to prevent these unlawful acts.

Nor do the prior arrests have any probative value. Defendants argue that Plaintiff's prior arrests weaken his claim for emotional damages "because it wasn't his first or (even) his second time being arrested." Def. Resp. at 2.[1] However, Plaintiff's emotional damages do not stem

---

[1] Defendants rely on *Bryan v. Jones*, 519 F. 2d 44, 46 (5th Cir. 1975), and cases that cite it, for the assertion that when assessing emotional damages: "[T]he suffering caused by the very fact of incarceration . . . may be much less for the recidivist than for one incarcerated for the first time. Therefore, the fact of prior imprisonment is a consideration to the extent of mental suffering occasioned by the wrongful confinement." *See* Def. Resp. at 2-3; *see also id.* at 2 (citing *Gonzalez v. Tampa*, 776 So.

2

solely from sitting in a holding cell and being moved to jail, as Defendants suggest. *See Coney v. Cobas*, 129 F. App'x 561, 562 (11th Cir. 2005) (no abuse of discretion denying evidence of prior arrests to rebut damages in case brought under § 1983 and state law because the crux of the claim "was the emotional trauma he suffered at the scene of arrest, rather than the fact of incarceration"). Like in *Coney*, the crux of Plaintiff's damages are not simply the fact of his incarceration. They are from the traumatic experience of the arrest itself, the subsequent media frenzy given Plaintiff's celebrity, and the resulting effect on his emotional wellbeing. *See* ECF No. 122-1 (Plaintiff's Dep.), at 89:25-90:06 ("Being on TMZ, having that moment be public like that and having, and being arrested, that's heavy. That's heavy stuff man. It's heavy to carry that especially as a false arrest that got dropped."); *id.* at 92:02-14 ("That footage is out and that's – it's part of my life forever just because [Verne] couldn't handle that situation."); *see also* ECF 156-4 (Wentworth Expert Report), at 2-3 (describing some of the "pervasive and influential media" that reported on Plaintiff's arrest). Additionally, Plaintiff's prior arrests occurred in the late 1990s and early 2000s, before Plaintiff became a well-known public figure. Those prior arrests did not result in his mugshot on TMZ or bodycam footage of the arrest going viral on social media.

In fact, courts have repeatedly found that in false arrest cases, prior arrests are simply not probative of the emotional distress caused by an unlawful arrest. *See Barber v. City of Chi.*, 725 F.3d 702, 713 (7th Cir. 2013) ("Importantly, 'there is a difference between being falsely arrested on one occasion and being rightfully arrested (and rightfully convicted) on another occasion . . .

---

2d 290 (Fla. 2d DCA 2000) (permitting inquiry into prior arrests for damages because the plaintiff "had such an extensive history of arrest that the emotional anguish and other intangible effects he and his family suffered as a result of this alleged false arrest were nominal at best")). Like the *Coney* plaintiff, Plaintiff does not seek damages merely from the wrongful incarceration. And importantly, considering his limited and mostly juvenile history, he cannot reasonably be considered a "recidivist."

[A] person may suffer emotional distress from being falsely arrested and held for mere hours while suffering no or minimal emotional distress (or emotional distress of a different kind) after being rightfully arrested, convicted, and incarcerated.'"); *Betts v. City of Chicago, Ill.*, 784 F. Supp. 2d 1020, 1025 (N.D. Ill. 2011) (denying motion to admit evidence of prior arrests where, "this court is not aware of, and the defendants do not point to, any evidence that supports the proposition that a person who has been *wrongfully* arrested is less traumatized by the experience simply because s/he has been *lawfully* arrested before, let alone evidence that shows that a person is less traumatized by a wrongful arrest because s/he has been *wrongfully* arrested before"). The circumstances of these stale arrests are incomparable and thus, would have no probative value to his emotional damages.

Second, admission of this evidence would be extremely prejudicial. These arrests occurred 14 to 23 years ago, mostly when Plaintiff was a minor. *See Lordeus v. Torres*, No. 1:17-CV-20726-UU, 2018 WL 1364641, at *2 (S.D. Fla. Mar. 1, 2018) ("Given that Plaintiff's conviction is eleven years old, its probative value is severely limited while its prejudicial value remains." (citing *United States v. Young*, 574 Fed. Appx. 896, 902 (11th Cir. 2014) ("Temporal remoteness of the [prior conviction] depleted th[e] evidence of any force of probity whatsoever.")); *Shaw v. Schulte*, No. 19-01343-KHV, 2023 WL 418663, at *3 (D. Kan. Jan. 25, 2023) (granting motion to exclude arrests from 2001, 2006, and 2009, even for assessing damages, because they were "remote in time" to the December 2017 events and had "only slight relevance, which is substantially outweighed by [their] potential prejudicial impact"). Given the lack of similarity or any probative value of these prior arrests, it is more likely a jury will treat Plaintiff's criminal history as a proxy for bad character. While limiting instructions are often used to avoid this type of inference, they often fall short in preventing unfair prejudice. *See Palmer v. Robbins*, No. CV419-167, 2022 WL

4

1063607, at *3 (S.D. Ga. Apr. 8, 2022) (excluding prior arrests to rebut damages, noting that "admission of evidence of prior arrests would give a false impression regarding [plaintiff] (non) law abiding citizen" and so "the probative value . . . is substantially outweighed by a danger of unfair prejudice and confusing the issues"); *Barber v. City of Chi.*, 725 F.3d at 713 (finding reversable error in admitting prior arrest for the purpose of assessing emotional damages, even with a limiting instruction, and adding: "While the defense may not have expressly mentioned the conviction in making [character] arguments, it did not need to do so to get its point across. The sting of the [] conviction was carefully folded into the pastry of bad behavior that the defense served to the jury.").

Plaintiff's prior arrests are dissimilar to this false arrest and their admission would be unduly prejudicial. For the foregoing reasons, this Court should grant Plaintiff's motion *in limine* and exclude evidence of his criminal history.

2. **Plaintiff's Discussions with Streaming Platforms are Irrelevant, Will Cause Juror Confusion and Cannot be Used for Impeachment**

Two and a half years after the false arrest, Plaintiff released a comedy special during which he devotes approximately 20 minutes out of an hour discussing his arrest and the resulting criminal case. Plaintiff engaged in preliminary talks to sell this comedy special to streaming platforms, but he never sold the special and no contracts were ever executed. Plaintiff requests that this Court bar introduction of evidence regarding these discussions because it will confuse the jury. It is too far removed from the arrest and is grounded in incomplete contract negotiations. Defendants argue that the special itself is admissible because it contains opposing party statements and is impeachment evidence, and that these discussions undercut Plaintiff's claims that he suffered financial harm as a result of the Defendants' actions and inactions. Def. Resp. at 8. The Defendants' arguments fail.

First, Plaintiff's comedy special cannot be used for impeachment purposes. Plaintiff testified that while during the special, he accurately described his interactions with the Defendant Officers, he moved some "details for comedic effect" and "changed up what was said a little bit because it's funnier." ECF No. 122-1 at 133:22-134:04. Defendants intend to use Plaintiff's intentionally embellished performance art to establish that he provided inconsistent accounts of his interactions with the Defendant Officers. Def. Resp. at 4. But this is impermissible under the applicable rules. Under Rule 608, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608; *see also United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001) (noting that Rule 608 allows "a party under certain circumstances, to challenge the credibility of a witness" using only "questions concerning past acts reflecting on the witness' character for truthfulness"). Defendants simply cannot impeach Plaintiff for statements that he made during a performance—particularly when he testified that he embellished some facts of his encounter with the Defendants for the sake of his art. Fed. R. Evid. 801(2) (opposing party statements are excluded from the hearsay rule only when the party made a statement that is "believed to be true.").

Second, Defendants argue that the communications between Plaintiff and streaming platforms "allow a jury to reasonably calculate Plaintiff's lost earning capacity." Def. Resp. at 5. The fact that Plaintiff, who is a successful entertainer, had preliminary conversations with streaming platforms about purchasing his self-produced work almost three years after his arrest has no relevance to the opportunities he lost in the aftermath of his arrest. Further, this evidence will cause the jury to improperly speculate about the potential impact these offers may have had on Plaintiff's income. No contracts were ever executed, and it is unknown whether the streaming

services would have ultimately paid Plaintiff the amounts initially discussed. This is the type of speculative evidence that courts routinely disfavor. *See Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) ("Speculative testimony is generally not admissible because it is not based on the witness's perception"); *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1202 n.16 (3rd Cir. 1995) (the ability to answer hypothetical questions is "[t]he essential difference" between expert and lay witnesses); *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1268 (N.D. Ala. 2011) ("A witness's opinion about an event that did not occur is mere speculation.").

Further, explaining to the jury the context for this evidence—that the special does not contain a factual account of the incident, that Plaintiff did not actually receive any funds from the comedy special, and that content focused on the arrest was just a portion of the overall special— would waste time, mislead the jury and create unfair prejudice. *See In re Seroquel Prod. Liab. Litig.*, 2009 WL 223140, at *7 (M.D. Fla. Jan. 30, 2009), *aff'd*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009) (barring the introduction of settlement evidence because it was "unfairly prejudicial, misleading, and a waste of time"); *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1318 (11th Cir. 2017) (excluding evidence that would have created "a time-consuming mini-trial"). The jury's confusion will be further compounded by Defendants' misrepresentation of these very facts, for instance, their assertion that these discussions "show Plaintiff was not only capable of negotiating a seven-figure deal" (his agent negotiated the deal, ECF No. 122-1 at 155:01-06) "but also that he successfully completed the deal" (he did not). Def. Mot. at 6; *see also id.* at 5 (stating Amazon offered Plaintiff "at least 1 million dollars" when it actually offered $500,000).

Evidence regarding Plaintiff's exchanges with the streaming platforms should clearly be excluded pursuant to Fed. R. Civ. 403. This evidence will confuse the jury, waste time and create

unfair prejudice. For the foregoing reasons, this Court should grant Plaintiff's motion *in limine* and exclude evidence of Plaintiff's discussions regarding *Miami Nights*.

Respectfully submitted,

**HANNIBAL BURESS**

By: /s/ Faudlin Pierre
      One of his attorneys

Faudlin Pierre
PIERRE SIMON
600 SW 4th Avenue
Fort Lauderdale, Florida 33131
(305) 336-9193
Fplaw08@yahoo.com

Sheila Bedi
Kara Crutcher
Community Justice Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-2492
sheila.bedi@law.northwestern.edu
kara.crutcher@law.northwestern.edu
Vanessa del Valle
Danielle Berkowsky
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-5932
vanessa.delvalle@law.northwestern.edu
danielle.berkowsky@macarthurjustice.org

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing document was electronically served on all counsel who have filed appearances in this case via the Court's CM/ECF system on August 1, 2023.

/s/ Faudlin Pierre