United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Hannibal Buress, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-23078-Civ-Scola |
| | ) | |
| City of Miami, and others, | ) | |
| Defendants. | ) | |

**Order Granting in Part and Denying in Part**
**Defendants' Motions for Summary Judgment**

    This matter is before the Court on the motions for summary judgment filed by Defendant Officers Luis Verne and Elio Villegas (Def. Officers' Mot. Summ. J., ECF No. 121) and by the Defendant City of Miami. (Def. City's Mot. Summ. J., ECF No. 124.) Plaintiff Hannibal Buress has responded in opposition to both motions. (Resp. to Officers' Mot., ECF No. 138; Resp. to City's Mot., ECF No. 141.) All Defendants have replied in support of their motions. (Def. Officers' Reply, ECF No. 147; Def. City's Reply, ECF No. 145.) After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **denies** the Defendant officers' motion for summary judgment with respect to Officer Verne (Counts 1, 2, 5, 6) and **grants** the Defendant officers' motion for summary judgment with respect to Officer Villegas (Count 3). The Court **denies** the Defendant City of Miami's motion for summary judgment (Count 4). (**ECF Nos. 121, 124**.)

1. **Background**

    Plaintiff Hannibal Buress, well-known stand-up comedian, brings this case against Miami Police Department Officers Luis Verne and Elio Villegas, and against the City of Miami itself, for violations of his civil rights under both federal and Florida law. Based on his arrest on the night of December 9, 2017, in Miami, Buress brings four claims against Officer Verne: two violations of 42 U.S.C. § 1983 ("Section 1983") for false arrest (Count 1) and retaliatory arrest (Count 2), and two state common-law claims for malicious prosecution (Count 5) and false arrest (Count 6). (Am. Compl. ¶¶ 62-73, 88-102, ECF No. 26.) He also brings one claim for violation of Section 1983 for failure to intervene against Officer Villegas (Count 3), and one claim against the City of Miami itself (Count 4) for an unlawful policy or procedure that allowed the violations of his civil rights under Section 1983. (*Id.* ¶¶ 74-87.)

On December 9, 2017, Officers Verne and Villegas were assigned to patrol the Wynwood area of Miami. (Def. Officers' Statement of Material Facts ("Officers' SOMF") ¶ 5, ECF No. 120; Pl.'s Resp. to Officers' SOMF ¶ 5, ECF No. 137.) Buress was visiting the area for the Art Basel festival, and he spent "substantial time" at Gramps Bar in Wynwood, where he "had drinks." (Officers' SOMF ¶ 8; Pl.'s Resp. to Officers' SOMF ¶ 8.) While the parties disagree about some of the specifics, it is undisputed that Buress arrived at the bar sometime in the afternoon and consumed some amount of alcohol during his "substantial time" there. (Officers' SOMF ¶¶ 8-9; Pl.'s Resp. to Officers' SOMF ¶¶ 8-9.) Buress eventually left the bar after his phone died, seeking a ride back to his hotel. He walked toward Officer Verne's post at the corner of NW 2nd Avenue and NW 20th Terrace. (Officers' SOMF ¶ 10; Pl.'s Resp. to Officers' SOMF ¶ 10.) While the parties again dispute some of the finer details of the initial interaction, both agree that once Buress walked up to Officer Verne, Buress asked Verne to "call me an Uber and I'll give you $20." (Officers' SOMF ¶ 12; Pl.'s Resp. to Officers' SOMF ¶ 12; Def. Officers' Reply SOMF ¶ 12, ECF No. 146.) Officer Verne refused, instead pointing Buress to a location on North Miami Avenue where he could find a taxi. (Officers' SOMF ¶ 14; Pl.'s Resp. to Officers' SOMF ¶ 14.)

The parties' accounts now begin to diverge more significantly. The Defendant officers state that Buress became belligerent and began screaming profanities at Officer Verne. (Officers' SOMF ¶¶ 15-17.) Buress states that he "saw Verne kissing a woman who came out of a bar" and began using "joking and lighthearted" profanity with Officer Verne about his kissing the woman while refusing to call Buress an Uber. (Pl.'s Resp. to Officers' SOMF ¶¶ 15-17.) Regardless, all parties agree that Buress and Officer Verne had a "back-and-forth" before Buress walked away and into a bar. Officer Verne followed Buress into the bar and told him to leave; Buress complied, although the parties dispute how quickly he did so. (Officers' SOMF ¶¶ 18-20; Pl.'s Resp. to Officers' SOMF ¶¶ 18-20; Def. Officers' Reply SOMF ¶¶ 18-20.) At this point, Officer Verne states that Buress was "belligerent" and "visibly drunk," and that he "could barely walk." (Officers' SOMF ¶¶ 17, 19.) Buress, in turn, asserts that he was neither belligerent nor unable to walk. (Pl.'s Resp. to Officers' SOMF ¶¶ 17, 19.) Buress does not challenge Officer Verne's perception that he was "visibly drunk," and, in fact, Buress agrees that Officer Verne "thought [the] Plaintiff was drunk." (*Id.* ¶ 19.)

At this point, as Buress left the bar with Officer Verne following him, Verne decided to turn on his body-worn camera. (Officers' SOMF ¶ 21; Pl.'s

Resp. to Officers' SOMF ¶ 21.)[1] At the point where the body-worn camera picks up, Officer Verne and Buress stand outside while Buress animatedly speaks to Verne from several feet away. Buress looks into the camera and says "Hey, what's up, I'm Hannibal Buress, this cop is stupid as fuck" (Verne BWC at 00:46). Officer Verne then says, "get out of here" and then immediately tells the Plaintiff to put his hands behind his back. (Verne BWC at 00:53-00:58.) The Plaintiff immediately begins asking why he is under arrest and Officer Verne does not provide a justification. (Verne BWC at 00:58-01:15.) Three people walk by, calling the Plaintiff "Hans" and beginning to record the scene on their phones. (Verne BWC at 01:15-01:50.) The Plaintiff continues to ask Officer Verne why he was under arrest, but also allows himself to be handcuffed and stands still without requiring restraint. (Pl.'s Resp. to Officers' SOMF ¶¶ 27, 56, 57.) Officer Villegas arrives about one minute later and assists Officer Verne with moving the Plaintiff to the squad car while the Plaintiff continues to inquire about the reason for his arrest. (*Id.* ¶¶ 52, 56-59.)

## 2. Legal Standards

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its

---

[1] The Court has reviewed the recording from Officer Verne's body-worn camera ("Verne BWC") in full, which was filed conventionally with the Court, as identified at ECF No. 118. No party disputes the validity of the body-worn camera footage.

burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Where video evidence is in the record, a court can only use the recording to "disregard the non-moving party's version of events" if it "so utterly discredits" the party's story "that no reasonable jury could have believed" that party. *Brooks v. Miller*, No. 21-10590, 2023 WL 5355022, *6 (11th Cir. Aug. 22, 2023) (quoting *Scott*, 550 U.S. at 380).

### 3. Analysis

The Court addresses each Defendant's arguments in turn. The Defendant Officers Verne and Villegas argue in their motion for summary judgment that Claims 1-3, 5, and 6 should be dismissed for the following reasons: Claims and 2, which allege First and Fourth Amendment violations under Section 1983 against Officer Verne, are barred by qualified immunity (Def. Officers' Mot. Summ. J. at 6-15, 17-20); Claims 5 and 6 which allege state-law malicious prosecution and false arrest claims against Officer Verne, are barred by Florida's sovereign immunity statute (*id.* at 21); and even if not barred by sovereign immunity, Claim 5's malicious prosecution allegation is not supported by the evidence (*id.* at 20-21); and Claim 3, which alleges a Fourth Amendment violation under Section 1983 for failure to intervene with a false arrest against Officer Villegas, is barred by qualified immunity. (*Id.* at 15-17.) The Court agrees regarding Officer Villegas and therefore grants the Officers' motion with respect to Claim 3 but disagrees and therefore denies the motion on Claims 1, 2, 5, and 6.

Separately, the Defendant City of Miami argues in its motion for summary judgment that Claim 4, which alleges that the City is responsible for the above-mentioned constitutional violations, fails because no underlying violations took place and that even if they did, the evidence is insufficient to show that the City had a custom or policy constituting deliberate indifference

that caused the violation. The Court disagrees and therefore denies the City of Miami's motion.

### A. Officer Verne is not entitled to summary judgment on the Plaintiff's Section 1983 and state law claims against him.

The Plaintiff's Section 1983 claims for false arrest and retaliatory arrest and state law claims for malicious prosecution and false arrest against Officer Verne may proceed because Officer Verne is not entitled to qualified immunity or immunity under Florida's sovereign immunity statute for his actions, and the Plaintiff has presented sufficient evidence for a reasonable jury to conclude that the Section 1983 and state law claims are valid.

### (1) Officer Verne is not entitled to qualified immunity on the Plaintiff's claims for violations of 42 U.S.C. § 1983.

"In order to assert a qualified immunity defense, a government official must first establish that he was acting within his discretionary authority at the time of the challenged conduct." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1125-26 (11th Cir. 2021). Because Buress does not challenge whether Officer Verne acted in a discretionary capacity, "the burden shifts" to Buress "to show (1) that [Officer Verne] 'violated a constitutional right'; and (2) that the 'right was clearly established at the time of the incident.'" *Id.*

### (a) A reasonable juror could conclude that Officer Verne violated Buress's clearly established Fourth Amendment rights by arresting him without arguable probable cause.

Officer Verne argues in his motion for summary judgment that he is entitled to qualified immunity against Buress's Section 1983 claims because Verne had probable cause to arrest Buress on the night of December 9, 2017. (Officers' Mot. Summ. J. at 6-21.) Officer Verne asserts that he had both actual and arguable probable cause to arrest Buress for several state-law crimes and therefore enjoys qualified immunity. (*Id.* at 9-15.) Officer Verne further argues that even if he violated Buress's constitutional rights, qualified immunity still applies because he did not violate a "clearly established" right. (*Id.* at 18-20.)

Buress's false arrest claim will be sufficient to defeat qualified immunity so long as Officer Verne lacked arguable probable cause to make an arrest and therefore violated Mr. Buress's clearly established rights under the Fourth Amendment. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1226, 1232 (11th Cir. 2004) ("A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim.") (citations

omitted), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020); *Poulakis*, 341 Fed. Appx. at 527. "The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest, . . . or a section 1983 malicious prosecution claim." *Tarpley v. Miami-Dade Cnty.*, 212 F. Supp. 3d 1273, 1281 (S.D. Fla. 2016) (Scola, J.) (citations omitted).

To meet his burden, Buress must show that sufficient facts are in dispute as to whether Office Verne even had *arguable* probable cause for the arrest. *See Poulakis v. Roger*, 341 Fed. Appx. 523, 526 (11th Cir. 2009) ("In wrongful arrest cases, we have frequently framed the "clearly established" prong as an "arguable probable cause" inquiry."). "Probable cause to arrest a person exists when reasonably trustworthy facts and circumstances lead a prudent person to believe that an individual has violated the law, is violating the law, or will violate the law." *Tarpley*, 212 F. Supp. 3d at 1281 (citing *Kingsland*, 382 F.3d at 1226). Additionally, "officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). Finally, when an arrest is warrantless, "the only question relevant to the objective reasonableness of a seizure is whether probable cause for *some* crime exists." *Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020) (emphasis in original). The test to determine whether arguable probable cause to affect a warrantless arrest for some crime existed is a "totality of the circumstances" test. *Khoury v. Miami-Dade Cnty. School Bd.*, 4 F.4th 1118, 1126 (11th Cir. 2021). Therefore, the Court's focus here is on whether the facts, when viewed in the light most favorable to Buress, demonstrate the existence of a factual dispute regarding the existence of arguable probable cause for Buress's warrantless arrest by Officer Verne.

Officer Verne argues that he had both arguable and actual probable cause to arrest Buress for five offenses: (1) bribery and unlawful compensation or reward for official behavior, Fla. Stat. §§ 838.015-.016; (2) disorderly intoxication, Fla. Stat. § 856.011; (3) disorderly conduct, Fla. Stat. § 877.03; (4) trespass, Fla. Stat. § 810.09; and (5) resisting an officer without violence, Fla. Stat. § 843.02. (Officers' Mot. Summ. J. at 9-15.) Taking each in turn, the Court concludes that Officer Verne did not have arguable or actual probable cause to arrest Buress for any of the crimes listed.

First, Officer Verne argues that probable cause to arrest Buress for bribery and unlawful compensation or reward for official behavior existed because Buress offered Verne money in exchange for Verne calling him an Uber. The elements of bribery under Florida law are: "(1) knowledge on the part of the accused of the official capacity of the person to whom the bribe is

offered, (2) the offering of a thing of value, and (3) the intent to influence the Official action of the person to whom the bribe is offered." *Nell v. State*, 277 So. 2d 1, 5 (Fla. 1973) (collecting cases). The offense for unlawful compensation or reward for official behavior is also premised on intent to influence official acts or acts taken pursuant to a public duty. *See* FLA. STAT. § 838.016 (". . . within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.").

Officer Verne had no arguable or actual probable cause to arrest Buress for bribery, unlawful compensation, or reward for official behavior because Buress's offer did not implicate any official act. The parties do not disagree about the relevant facts: Buress approached Officer Verne initially and said "call me an Uber and I'll give you $20." (Officers' SOMF ¶ 12; Pl.'s SOMF ¶ 12.) Despite mentioning Buress's line in *Miami Nights* that police officers are "supposed to protect and serve," Officer Verne does not make a serious attempt to argue that calling an Uber is within the scope of a police officer's official duties, instead attempting to establish that the bribery and unlawful compensation or reward statutes apply to offers to a public official for *any* act. (Def. Officers' Mot. Summ. J. at 10-11.) However, it is well-established that these statutes do not apply to every act of a public official as a matter of law. *See, e.g., Raines v. State*, 65 So. 2d 558, 560 (Fla. 1953) (noting that "[t]he rule seems to be well settled"). Therefore, no reasonable police officer would have concluded that probable cause existed to arrest Buress based upon his offer of $20.

Officer Verne further argues that probable cause existed to arrest Buress for disorderly intoxication and disorderly conduct because Buress "yelled profanities," causing onlookers to "notic[e] the exchange" and "disregard[ed] Verne'[s] commands to leave[.]" (Officers' Mot. Summ. J. at 12.) The Court addresses probable cause for both offenses together due to the similarities between the relevant facts for each and the applicable law.

Under Florida's disorderly intoxication statute, "[n]o person in the state shall be intoxicated and endanger the safety of another person or property, and no person in the state shall be intoxicated or drink any alcoholic beverage in a public place or in or upon any public conveyance and cause a public disturbance." FLA. STAT. § 856.011. Therefore, to establish arguable probable cause, a reasonable police officer in Officer Verne's position, given the totality of the circumstances, would have needed to believe that Buress endangered the safety of another person or property or caused a public disturbance. *State v. Holden*, 299 So. 2d 8, 9 (Fla. 1974). Similarly, under Florida law, disorderly conduct includes "acts . . . of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may

witness them, or . . . brawling or fighting, or . . . such conduct as to constitute a breach of the peace or disorderly conduct." FLA. STAT. § 877.03.

When viewing the evidence with respect to probable cause for disorderly intoxication and disorderly conduct in the light most favorable to Buress, there is a genuine factual dispute over whether Officer Verne had actual or arguable probable cause to arrest Buress. Both sides agree that Buress was intoxicated and insulted Officer Verne, including with profanities, but Buress maintains that he used a joking, light-hearted tone and did not threaten Verne or physically interfere with Verne. (Pl.'s Resp. to Officers' SOMF ¶ 15.) Buress also disputes Verne's version of events with respect to the "crowd" of people who gathered as a result of Buress's alleged disorderly conduct and/or intoxication. Buress says that three people gathered to record Verne's activities and that his behavior drew virtually no other attention. (*Id.* ¶¶ 21-22.) The body-worn camera footage also supports this interpretation of the evidence, showing multiple groups of pedestrians walking past Buress with barely a glance and three people stopping to record Verne on their phones. (*Id.* ¶ 22.)

Even if it was undisputed that Buress aggressively verbally abused Office Verne and drew a crowd due to his behavior, such conduct cannot form the basis for an arrest. An individual's speech without more—even if the speech is offensive—cannot provide probable cause for either of these offenses under Supreme Court, Eleventh Circuit, and Florida Supreme Court precedent. "The freedom of individuals to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987)). Courts have interpreted this principle as applied to the Florida disorderly conduct statute to require that a defendant (1) inflict injury or tend to incite an immediate breach of the peace, or (2) falsely report some physical hazard so as to create a clear and present danger of bodily harm to others. *L.A.T. v. State*, 650 So. 2d 214, 218 (Fla. Dist. Ct. App. 1995) (Hubbart, J., concurring); *see W.L. v. State*, 769 So. 2d 1132, 1133 (Fla. Dist. Ct. App. 2000) ("Respondent never physically interfered with the police, never physically threatened them in any manner, and never impeded the execution of their legal duty. The conduct for which respondent was punished was pure speech, and is thus protected by the First Amendment."). Verne lacked probable cause to arrest the Plaintiff for disorderly intoxication or disorderly conduct for purposes of summary judgment.

The Defendants also argue that Office Verne had probable cause to believe Buress committed the crime of Trespass on Property Other Than

Structure or Conveyance, FLA. STAT. § 810.09,[2] when he "ignored commands to not enter the venue and then refused to leave the venue after multiple commands once he was inside." (Def. Officers' Mot. Summ. J. at 14.) The statute states that a trespass is committed "[i]f the offender defies an order to leave, personally communicated to the offender by the owner of the premises or by an authorized person." FLA. STAT. § 810.09.

The Court again finds sufficient debate regarding the underlying facts to deny summary judgment. Buress claims that he "complied immediately" with Officer Verne's orders (even if they were not in fact authorized) and therefore never defied any order as required by the trespass statute. (Pl.'s Resp. to Officers' SOMF ¶ 20.) Furthermore, even if Officer Verne subjectively believed himself to have authorization, the relevant inquiry is objective. *See Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020). A reasonable officer would not have believed himself to have authorization to order a bar patron to leave the premises without checking for the required affidavit or speaking to management. Even if such action would be reasonable under certain circumstances, the facts according to Buress do not reflect any such circumstances. Buress maintains that he entered the area without exhibiting any unusual behavior that would provide grounds for his removal. (Pl.'s Resp. to Officers' SOMF ¶ 19.)

Finally, Officer Verne argues that Buress's resistance to his arrest supported probable cause. (Def. Officers' Mot. Summ. J. at 15.) This argument fails because Buress's resistance cannot justify probable cause for the arrest itself. *See Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1224 n.7 (M.D. Ala. 2012) ("Resisting arrest quite obviously could not serve as probable cause for initiating . . . arrest—that would put the cart before the horse.").

Nor were the elements for resisting arrest without violence met in this case. The statute reads: "Whoever shall resist, obstruct, or oppose any officer … in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor…." FLA. STAT. § 843.02. Because Officer Verne lacked probable cause to arrest in the first place, Buress did not resist him "in the lawful execution" of a legal duty. Resisting arrest without violence could not provide arguable probable cause that would entitle Officer Verne to qualified immunity for Buress's arrest.

---

[2] The Plaintiff argues in his motion that "Section 810.09 is inapplicable because the bar that Plaintiff entered is a 'structure' as defined in Section 810.011(1)." (Pl.'s Resp. to Def. Officers' Mot. Summ. J. at 11, n.5; Def. Officers' Reply at 3-4.) The Court's conclusion would be the same under either statute because Buress neither refused nor defied orders under his version of events, nor would a reasonable police officer have believed himself to have authorization to order Buress's departure under the undisputed facts with all inferences drawn in favor of the Plaintiff.

### (b) The Plaintiff has raised a genuine dispute of material fact regarding whether Officer Verne violated clearly established First Amendment rights by arresting the Plaintiff for his protected speech.

Absent probable cause, the law is "clearly established" that police officers may not retaliate against citizens for exercising their Free Speech rights. *Bennett v. Hendrix*, 423 F.3d 1247, 1255-56 (11th Cir. 2005) ("[The Eleventh Circuit] and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights.").

To state a First Amendment retaliation claim, a plaintiff must establish "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254. To establish causation, a plaintiff must generally show lack of probable cause *and* that the retaliation was a substantial or motivating factor behind the arrest. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1296 (11th Cir. 2019) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019)).

The Plaintiff's First Amendment claim survives summary judgment. Using the Plaintiff's version of events, and as discussed above with respect to disorderly conduct, none of his speech fell outside the scope of First Amendment protections. Second, an arrest would certainly deter the vast majority of people from exercising their First Amendment rights, especially with respect to criticisms of police conduct. Finally, as discussed in detail above, Officer Verne lacked probable cause to arrest the Plaintiff and there is a lively debate between the parties over the material facts with respect to Officer Verne's motivations for arresting the Plaintiff. Summary judgment is denied for Claim 2.

### (2) The Plaintiff's state law claims against Officer Verne may proceed.

Officer Verne is not entitled to immunity from the state law malicious prosecution and false arrest claims because a genuine issue of material fact exists as to whether Officer Verne acted in bad faith, maliciously, or wantonly. Furthermore, the Plaintiff has provided sufficient evidence for the state-law malicious prosecution claim to survive summary judgment.

### a. Officer Verne is not entitled to immunity from the state law claims.

A police officer is immune from individual liability for on-the-job torts as long as he did not act in bad faith, maliciously, or wantonly. *See* FLA. STAT. § 768.28(9)(a). If a reasonable jury could conclude based on the evidence that the officer acted with "the subjective intent to do wrong," the officer is not entitled to immunity. *Baxter v. Roberts*, 54 F.4th 1241, 1272 (11th Cir. 2022) (quoting *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. Dist. Ct. App. 2020).

The Court concludes that Officer Verne is not entitled to immunity under Florida's sovereign immunity statute because the Plaintiff has provided sufficient facts to allow a reasonable jury to conclude that Officer Verne acted in bad faith, maliciously, or wantonly by arresting Buress without probable cause. In particular, Buress points to Officer Verne's reporting in his arrest affidavit, which could reflect a willfully fabricated version of events depending on the weight given to the conflicting evidence, (Pl.'s Resp. to Officers' SOMF ¶ 63), and further potential misstatements made to the prosecutor who ultimately decided not to prosecute the case. (*See id.* ¶¶ 40, 64.) In combination with Officer Verne's comments at the scene, a reasonable jury could conclude that he acted wantonly if not maliciously and he therefore does not enjoy sovereign immunity.

### b. The state-law malicious prosecution claim is supported by sufficient evidence to survive summary judgment.

The elements of state-law malicious prosecution are: (1) an original judicial proceeding against the plaintiff was commenced; (2) the defendant was the legal cause of the proceeding; (3) the termination of the original proceeding was in the plaintiff's favor; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the defendant; and (6) the plaintiff suffered damages. *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002).

The Defendants argue that the Plaintiff's malicious prosecution claim cannot succeed because Officer Verne had probable cause and the Plaintiff has not presented evidence on potential malice on the part of Officer Verne. (Def. Officers' Mot. Summ. J. at 20-21.) Regarding probable cause, the Court rejects Officer Verne's argument for the reasons set out above with respect to qualified immunity. On evidence of malice, the Court observes that "legal malice is sufficient and may be inferred from, among other things, a lack of probable cause." *Durkin*, 814 So. 2d at 1248. The Court also finds that a reasonable jury could find malice using the same evidence relevant to state sovereign

immunity, including the potentially willful fabrication of evidence. (Pl.'s Resp. to Officers' SOMF ¶ 63.)

### B. Officer Villegas is entitled to qualified immunity on the Plaintiff's claim under 42 U.S.C. § 1983 for failure to intervene.

Officer Villegas argues that he is also entitled to qualified immunity for two reasons—first, because Officer Verne had arguable probable cause to arrest Buress, and second, because Officer Villegas did not sufficiently participate in Buress's arrest or have the necessary knowledge to give him notice that Officer Verne lacked probable cause for the arrest. (Officers' Mot. Summ. J. at 16-17.) Because the Court has already addressed whether Officer Verne's warrantless arrest lacked arguable probable cause, the Court need only address Officer Villegas' role in the arrest and knowledge of the circumstances.

"It is clear that if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Tarpley*, 212 F. Supp. 3d at 1285. "But the Eleventh Circuit has taken a decidedly more circumscribed view with respect to an officer's duty to intervene *in a false arrest*." *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1318 (S.D. Fla. 2020) (Altman, J.) (emphasis in original). Instead, when a failure to intervene claim is based on an accusation of false arrest, "unless the non-intervening officer 'was part of the chain of command authorizing the arrest action,' the Eleventh Circuit has held that '[m]erely being present with the arresting officers at the scene is not enough.'" *Id.* (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010)). Nor must non-arresting officers investigate the basis of another officer's arrest. *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013).

Based on Officer Verne's body-worn camera footage and Buress's version of events, Officer Villegas did not have sufficient notice that Officer Verne lacked probable cause to justify depriving him of qualified immunity for failure to intervene. Neither the pre-arrest events nor the arrest itself took place in the presence of Office Villegas. (*See* Pl.'s Resp. to Officers' SOMF ¶ 30.) The first time Officer Villegas appeared on the scene was after Buress was already in handcuffs and Officer Villegas has testified that at the time had no reason to doubt that Officer Verne had a basis to arrest Buress. (Officers' SOMF ¶ 36; Pl.'s Resp. to Officers' SOMF ¶ 36.) He had no knowledge of the reason for the arrest but had merely respondedto  Officer Verne's request for backup, (Officers' SOMF ¶¶ 29-30; Pl.'s Resp. to Officers' SOMF ¶ 30). Officer Villegas was entitled to assume that Officer Verne had acted "in a constitutional manner and in good faith." *See Wilkerson*, 736 F.3d at 980. Officer Villegas had

no duty to investigate the basis of the arrest at that stage and merely assisted with moving Buress to the patrol car. (Pl.'s Resp. to Officers' SOMF ¶¶ 32, 33, 35.) The Plaintiff does not argue that Officer Villegas participated further in the arrest or detention after having received additional information about the basis for the arrest (or lack thereof). *See Jones v. Cannon,* 174 F.3d 1271, 1283-84 (11th Cir. 1999).

Buress's proclamations to Officer Villegas that "I haven't done anything" and that Officer Verne was "just salty that [the Plaintiff] roasted his ass" were insufficient to overcome the presumption that the arrest was valid. (*See* Pl.'s Resp. to Officers' SOMF ¶¶ 33, 54, 59.) The Plaintiff was visibly intoxicated, and Officer Verne provided trespass and disorderly intoxication as the underlying charges. (*Id.* ¶¶ 32, 62.) Even reading the facts in the light most favorable to the Plaintiff, Officer Villegas did not violate the Plaintiff's constitutional rights. Officer Villegas is entitled to qualified immunity and the Officers' Motion for Summary Judgment is therefore granted with respect to Count 3.

### C. The City is not entitled to summary judgment on the Plaintiff's *Monell* claim under 42 U.S.C. § 1983.

Finally, the City argues that the Plaintiff has failed to establish a genuine dispute as to material facts regarding the existence of a policy, custom, or procedure that would support Section 1983 liability under the Supreme Court's decision in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), against the City for Officer Verne's conduct.

To demonstrate municipal liability, Buress must show (1) that his constitutional rights were violated; (2) that the City of Miami had a practice or custom that constituted deliberate indifference to that constitutional right; and (3) that the custom caused the violation. *See Favors v. City of Atlanta*, 849 Fed. Appx. 813, 821 (11th Cir. 2021) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). "[A] plaintiff may establish a policy or custom exists by showing a 'persistent and wide-spread practice' and the government's actual or constructive knowledge of that practice." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). "[R]andom acts or isolated incidents are insufficient to establish a custom or policy." *Id.* "For example, even where a municipality provides rules and regulations for the operation of its police department, if those rules are repeatedly violated and the municipality has knowledge of the conduct but fails to rectify the situation then it may be liable. *Id.* at 1499 ("The continued failure of the [municipality] to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983."). "A municipality's

failure to correct the constitutionally offensive actions of its police department may rise to the level of 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (internal citations omitted). "The causation prong asks whether the injury would have been avoided 'had the employee been trained under a program that was not deficient in the identified respect.'" *Favors*, 849 Fed. Appx. at 821 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)). We address the second and third elements of the *Monell* claim because, as discussed above, the Plaintiff has established constitutional violations on the part of Verne for purposes of summary judgment.

     The evidence on the record regarding the City of Miami's alleged deliberate indifference to constitutional violations creates a triable issue of fact.[3] The Plaintiff has provided evidence that, if believed, could establish that the City knew of and ignored constitutional violations similar to those alleged in this case. The Plaintiff provides evidence including a Department of Justice report from 2003 finding that the Miami Police Department had a pattern of unlawful detentions, twenty examples of complaints regarding relevant police conduct from 2015 to 2018, and evidence of the City settling similar claims in civil litigation. (Pl.'s Resp. to Def. City's Mot. Summ. J. at 4-7; Pl.'s Resp. to Def. City's SOMF ¶¶ 74-93; 97-98.) The City disputes the significance of each of these pieces of evidence, but the Court may not assign weight to various evidence at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); Def. City's SOMF ¶¶ 41-49. Summary judgment must be denied because a reasonable factfinder could conclude that the City had at least constructive notice of police officers making arrests of the kind alleged here based on the evidence provided by the Plaintiff.

     With respect to deliberate indifference, there is again significant genuine dispute over material facts. The Plaintiff points to the City's designee on the police department's disciplinary process testifying that the City as a rule does not investigate false arrests unless accompanied by some other misconduct

---

[3] The Court finds that sufficient dispute regarding material facts exists even without the additional support of the Plaintiff's expert report, but notes that the Defendant City's argument that the Court should not consider the report because it is inadmissible is unpersuasive. The City principally relies on *Carr v. Tatangelo*, 338 F.3d 1259 (11th Cir. 2003), decided before Rule 56 was amended to include "other materials" in the list of documents reviewable by courts on summary judgment. The Court agrees with other district courts that the report may be considered at summary judgment because there is no indication that the report is not "capable of being reduced to admissible form at trial." *Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1194 n.5 (S.D. Ala. 2018); *see Guantanamera Cigars Co. v. SMCI Holding, Inc.*, No. 21-cv-21714, 2022 WL 1288742, at *3 (S.D. Fla. Apr. 29, 2022); *Colonial Pipeline Co., Inc. v. Ceco Pipeline Services Co., Inc.*, No. 2:19-cv-1334, 2022 WL 4283098, at *7-10 (N.D. Ala. 2022).

allegation. (Pl.'s Resp. to Def. City's SOMF ¶¶ 94-96.) Further, the Plaintiff argues that an incident at a bar about one year before the Plaintiff's arrest took place shows the City's failure to act on Officer Verne's misconduct. (Pl.'s Resp. to Def. City's Mot. Summ. J. at 15; Pl.'s Resp. to Def. City's SOMF ¶¶ 54-55; Def. City's SOMF ¶¶ 54-55.) The Plaintiff asserts that Officer Verne attacking a civilian for calling him a "pig" went unpunished. (*Id.*) When viewing these facts in the light most favorable to the Plaintiff, they may not clear the evidentiary hurdle by a lot, but by enough to defeat summary judgment.

Third and finally, there is sufficient dispute over whether the City's behavior caused the violations against the Plaintiff. The parties disagree about whether Officer Verne received training and whether a lack of training caused any constitutional violation. Accepting the facts as Plaintiff tells them on summary judgment, Officer Verne himself testified that he never received training that "an individual who is yelling and cursing can't be arrested for merely yelling and cursing," and he possessed a 60-70% proficiency score on probable cause determinations in the months leading up to the Plaintiff's arrest. (Pl.'s Resp. to Def. City's SOMF ¶ 101.) The City denies that Verne did not receive relevant training and argues that regardless of training, Officer Verne understood probable cause and therefore the City's training program could not have caused the violation (Def. City's Reply SOMF ¶ 100.) Given this dispute, a trier of fact, not the Court, must determine whether the City's actions (or failure to act) was the "moving force" behind Office Verne's arrest of the Plaintiff. *See Vineyard*, 990 F.2d at 1212; The Court therefore denies the City of Miami's motion for summary judgment.

### 4. Conclusion

For the reasons stated above, the Court **denies** the Defendant officers' motion for summary judgment with respect to Officer Verne (Counts 1, 2, 5, and 6) and **grants** the Defendant officers' motion for summary judgment with respect to Officer Villegas (Count 3). The Court **denies** the Defendant City of Miami's motion for summary judgment (Count 4). (**ECF Nos. 121, 124**.)

**Done and ordered** at Miami, Florida on August 30, 2023.

Robert N. Scola, Jr.
United States District Judge