## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## 20-CV-23078-RNS

**HANNIBAL BURESS**,

    *Plaintiff*,

v.

 **CITY OF MIAMI**, *et al.*,

    *Defendants*.

_____/

## DEFENDANT CITY OF MIAMI'S
## MOTION FOR RECONSIDERATION

GEORGE K. WYSONG, III, City Attorney
KEVIN R. JONES, Deputy City Attorney
BRYAN E. CAPDEVILA, Assistant City Attorney
BRANDON L. FERNANDEZ, Assistant City Attorney
Attorneys for City of Miami
444 S.W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Emails: bcapdevila@miamigov.com;
       bfernandez@miamigov.com

Under Federal Rule of Civil Procedure 54(b) and the Court's inherent authority, Defendant City of Miami files this Motion for Reconsideration of the denial of its Motion for Summary Judgment. *See generally* City's Motion for Summary Judgment ("MSJ") [ECF No. 124]; Statement of Material Fact ("SMF") [ECF No. 123]; Response in Opposition ("Response") [ECF No. 141]; Plaintiff's Statement of Material Facts ("PSMF") [ECF No. 140]; Reply [ECF No. 145]; Reply Statement of Material Facts ("R-SMF") [ECF No. 144]; Order [ECF No. 165]. As set forth below, the City submits this Motion should be granted, the Order should be vacated only as to its analysis concerning the City, and an order granting the City's Motion for Summary Judgment should issue.

## MEMORANDUM OF LAW IN SUPPORT

### I.     THE LAW

Under Federal Rule of Civil Procedure 54(b), "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised *at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b) (emphasis added). In other words, the district court retains inherent authority for reconsideration of a non-final order under this rule if such an order does not adjudicate every claim in an action. *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1380 (11th Cir. 2024); *Hernandez v. United States*, No. 16-CV-22657, 2016 WL 8078310, at *1 (S.D. Fla. Dec. 7, 2016).

"Motions for reconsideration are appropriate where, for example, the Court has patently misunderstood a party . . . or where there is manifest injustice." *Vila v. Padron*, No. 04-20520-CIV, 2005 WL 6104075, at *1 (S.D. Fla. Mar. 31, 2005) (Altonaga, J.). As for the legal term "manifest injustice," this Court has defined it as "an error in the trial court that is direct, obvious, and observable" or "apparent to the point of being indisputable" under the governing law. *Schmidt v. Washington Newspaper Publ'g Co., LLC*, No. 18-80614-CIV, 2018 WL 6422705, at *2 (S.D. Fla. Dec. 6, 2018) (Reinhart, M.J.).

### II.     SUMMARY OF THE ARGUMENT

The only claim against the City is the (broadly pled) constitutional claim under *Monell*.[1] *See generally* FAC [ECF No. 26]. In its Order, the Court observed that the City argued the Plaintiff could not establish a genuine dispute as to the material facts regarding the existence of a policy, custom, or practice. *See Buress v. City of Miami*, No. 20-23078-CIV, 2023 WL 5608061, at *9

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

(S.D. Fla. Aug. 30, 2023). The Court elaborated that this standard required the Plaintiff to show that a pattern of failing to correct "constitutionally offensive actions" to show the City's police department has a "custom or policy" that "tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Id.* (cleaned up). The Court ultimately found: "[t]he Plaintiff has provided evidence that, if believed, could establish that the City knew of and ignored constitutional violations similar to those alleged in this case." *Id.* In its analysis, the Court stated that the City "dispute[d] the significance of each of these pieces of evidence" and further determined that the City's efforts to dispute the significance of said "evidence" should—in large part—be disregarded because it amounted to an impermissible request to "assign weight to various evidence at the summary judgment stage." *Id.*

But the City advanced different arguments that ultimately went unaddressed. In fact, the Order does not identify or discuss the governing law on numerous issues. Nor does it address many of the undisputed facts that dismantled the Plaintiff's theories and characterizations of the record. And the Order reflects a misapprehension of the City's arguments, which were entirely consistent with the summary judgment standard and applicable substantive law. Had the Court addressed the City's position—that is, certain evidence did not qualify as "material" and could not create a "genuine" dispute because precedent has explicitly found those categories of "evidence" improper on summary judgment and at trial—the City would have prevailed.

## III.    Argument

**A.  The City Argued that the Evidence Cited by the Plaintiff Did Not Create a Genuine Issue of Material Fact and, Therefore, Could Not Be Considered on Summary Judgment Consistent with the Applicable Standard of Review.**

The Court stated that the Plaintiff put forth certain "pieces of evidence" that, if believed, could create a genuine issue of material fact as to the custom or practice showing required to maintain their claim against the City. *See Buress*, 2023 WL 5608061, at *9 (citing *Monell*, supra). The City addresses this "evidence"—all of which was improper because it failed to create a *genuine* or *material* dispute—in turn. The City does this to articulate the disparity between the City's arguments and the Court's ultimate conclusion, demonstrating the City's arguments were misconstrued or that the correct application of law was clear but not properly applied.

### i.    The Unfounded Complaints and the Number Cited.

*First*, the Plaintiff relied on "twenty examples of complaints," which the Court stated were "relevant police conduct from 2015 to 2018." *Id.* The City argued that the Plaintiff had effectively

relied on "the number of complaints," which "does not provide a city with notice of a policy or custom" consistent with Eleventh Circuit precedent. MSJ at 13 (citing *Brooks v. Scheib*, 813 F.2d 1191, 1192–93 (11th Cir. 1987)). The City, notwithstanding, argued the Plaintiff lacked evidence to show any of those allegations of misconduct "had merit," meaning the Plaintiff "could never show a genuine issue of material fact to prove the City had notice of a problem based on the number of complaints or even the contents therein." *Id.* In support, the City cited *Brooks v. Sheib* and *Gonzalez v. City of Miami*[2] for the proposition that "unfounded reports do not put a municipality on notice of a pattern of constitutional violations." *Id.* (cleaned up).

The City's argument was consistent with Eleventh Circuit precedent. Three cases illustrate this point even further. In *Brooks*, even though there had been ten citizen complaints about police officer Scheib, the Eleventh Circuit held that the city did not have any notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct *had any merit*." 813 F.2d at 1193 (emphasis added).

Likewise, in *Whitaker v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015), this Court dismissed *with prejudice* a second amended pleading because the plaintiff failed to explain how thirteen shootings in a nine-month span were relevant constitutional violations, particularly because that plaintiff failed to articulate how the prior shootings "were *deemed* unjustified, unconstitutional, or were anything other than legitimate, self-defense shootings." *Id.* (emphasis added). In other words, unless they were deemed unconstitutional/unjustified or the evidence clearly showed the wrongfulness of those shootings, the plaintiff could not plausibly state a claim for relief—much less show the *Monell* claim had merit. *See id.*

Lastly, the Eleventh Circuit's decision in *Ludaway v. City of Jacksonville*, Fla., demonstrated that **170 complaints of excessive force between January 2004 and December 2005 (i.e., a two year period) did not show a custom of excessive force** because "only 10 of these claims of excessive force were sustained" and other cases resulted in no disposition by virtue of the officers resigning and other circumstances. 245 F. App'x 949, 952 (11th Cir. 2007).

Setting aside that a plaintiff must show prior instances have merit to put a City on notice of a pattern and practice related to constitutional violations, *see id.*, reliance on prior instances of misconduct requires such meritorious instances to be "substantially similar" to the instant case.

---

[2] *Gonzalez v. City of Miami*, No. 1:22-CV-21587-KMM, 2023 WL 2030635, at *3 (S.D. Fla. Feb. 15, 2023) (Moore, J.).

*Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). Of course, if unfounded complaints (i.e., those without proof of merit) cannot be considered on summary judgment, the Court never reaches the next question—that is, whether the cited-to examples are substantially similar. *See, e.g.*, *Johnson v. Dixon*, 666 F. App'x 828, 831 (11th Cir. 2016) (relying on "exonerated complaints," "seven sustained excessive force complaints from a period of over three years . . . not limited to inmates with mental illness," or proof that the "statistics about the use of force at the mental health dorm . . . *without any demonstration that force was wrongly employed*" failed to create a genuine issue of material fact (emphasis added)). Those cases are not outliers. *See, e.g.*, *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1373–74 (S.D. Fla. 2013) (granting summary judgment where plaintiff failed to prove each cited-to incident were proven to have merit).

Indeed, *this* Court held that "the propriety of . . . considering these [kind of] reports on summary judgment . . . dubious" even if substantial similarity could be shown. *See Clarke v. Phelan*, No. 16-25217-CV, 2018 WL 987260, at *9 (S.D. Fla. Feb. 20, 2018) (Scola, J.). Without a showing that such reports "had any merit," as *this* Court held, *see id.*, a plaintiff cannot rely on complaints of misconduct to create a *genuine* or *material* dispute because it either amounts to relying on the number submitted or amounts to relying on unfounded complaints, which is not a competent methodology to creating a genuine or material dispute. *See Brooks*, 813 F.2d at 1193 ("Brooks never demonstrated that past complaints of police misconduct had any merit. Indeed, the number of complaints bears no relation to their validity.").

Another obstacle to a plaintiff's burden exists, which the City pointed out. A plaintiff cannot not rely on the statements/interviews given to investigating officers within internal affairs investigations because it is a double hearsay issue "that cannot be admitted at trial or considered on summary judgment." *Shehada*, 965 F. Supp. 2d at 1374 (quoting *Jessup v. Miami-Dade Cty.*, 697 F. Supp. 2d 1312, 1322 (S.D. Fla. 2010)); *see also United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir.2009) ("[P]lacing otherwise inadmissible hearsay statement by third-parties into a government report does not make the statements admissible."). Thus, if the statements cannot be considered for the truth of the matter asserted at trial (i.e., merit of the underlying complaint to internal affairs), then the underlying complaint cannot create a genuine dispute of material fact (i.e., notice of substantially similar incidents for deliberate indifference). *See, e.g.*, *Macuba v. Deboer*, 193 F.3d 1316, 1325 (11th Cir. 1999) (explaining hearsay is not capable of creating a genuine or material dispute unless the hearsay is otherwise admissible at trial).

As applied here, if a complainant stated an unlawful detention transpired or that they were falsely arrested, the Plaintiff had to articulate why *each* internal affair complainant's allegations were true, substantially similar to the case at hand, and not merely an inadmissible double hearsay version of the events for the underlying complaint to be considered for the truth of the matter asserted. *See Brooks*, 813 F.2d at 1193; *Shehada*, 965 F. Supp. 2d at 1374.

In sum, the Court found "twenty" examples as relevant even though the City explained why the cited-to examples could not create a genuine issue of material of fact as a matter of law due to the Plaintiff's inability to prove their merit, substantial similarity, and the inadmissibility issues created by the Plaintiff's reliance on incompetent evidence.

The City also explained why the cited-to examples could not create a genuine of material fact based on the *factual* record. The City explained 6 of the 38 events cited by Plaintiff confirms discipline was implemented. [SMF ¶ 47]. Thus, those contradict the contention that the City tacitly authorizes non-compliance with its rules or the Constitution. *See Am. Fed'n of Lab*, 637 F.3d at 1189 ("A plaintiff must present evidence not only that the municipality was on notice of a need to train but also that the municipality made a choice not to do so.").

In addition, 1 investigation was referred out to another agency with preliminary determinations that the allegations were unsupported. [SMF ¶ 49]. And 10 of the cited 38 events resulted in closed investigations because the complainant disappeared, declined to make themselves available, or otherwise cooperate for a statement. [SMF ¶ 43]. Similarly, 2 of the 38 events resulted in closed investigations because the complainant formally withdrew their allegations. [SMF ¶ 44]. In sum, 19 of the 38 complaints were abandoned, could not be investigated, resulted in discipline, or were transferred to another agency for further investigation. None of these instances exhibit a deliberate indifference to known constitutional violations containing merit. *See Brooks*, 813 F.2d at 1193; *Ludaway*, 245 F. App'x at 952.

This left 19 investigations remaining. Among those remaining 19 investigations, 13 resulted in the officer being cleared of wrongdoing pursuant to objective evidence. [SMF ¶ 45]. The remaining cases resulted in a determination where no discipline was recommended because a determination in either direction could not be made due to inconclusive evidence; however, 3 in this final batch arguably fit into the "cleared" category. [SMF ¶¶ 45–46].

As a result, the Plaintiff—as the City argued—had no evidence to refute the validity of those determinations based on the factual record. Nor could he show they qualified as competent

evidence as a matter of law for lack of a showing of merit, substantial similarity, and the improper reliance on inadmissible hearsay. The City's argument was consistent with the applicable summary judgment standard. *See* Fed. R. Civ. P. 56(c)(1)(B), (c)(2) (showing a movant may argue the cited-to materials do not establish the presence of genuine dispute or evidence that is admissible at trial or otherwise admissible to support that fact). And it also comported with the substantive law, which, in turn, "identif[ies] which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court rejected the City's arguments of law and fact as an attempt to merely weigh the evidence. *See* Order at 14. In this regard, the Court misapprehended the City's position or otherwise did not apply the governing law or applicable facts. *Vila*, 2005 WL 6104075, at *1; *Schmidt*, 2018 WL 6422705, at *2. This error is indisputable because the Court did not explain which of the investigations were found to have merit, to be substantially similar to the case at hand, or to be admissible at trial for the purposes of identifying a genuine issue of material fact.

### ii.     Settlement Agreements and a Newspaper Article Regarding Settlements

**Second**, the Plaintiff relied on "evidence" of settled cases, which the Court said were "similar" examples of "civil litigation." *See Buress*, 2023 WL 5608061, at *9. And, to support this theory of settled cases being capable of giving notice, the Plaintiff coupled that reliance with a citation to a Washington Post article for the proposition that "40 settlements" were paid out between 2010-2020 "for false arrest claims." Response at 7 (citing PSMF ¶ 97 and WAPO Article [ECF No. 139-6]). To begin, the cited-to article does not stand for the proposition that settlements were paid "for false arrest claims," as it explicitly states "*other civil rights claims*." WAPO Article [ECF No. 139-6] (emphasis added). As the term "civil rights" covers a wide array of issues unrelated to unlawful detentions and arrests, the settlement agreements do not provide proof of substantially similar incidents—much less substantially similar incidents having *merit. See id.* Nor may the newspaper article be considered for the truth of the matter asserted by the Plaintiff—i.e., the number of settlements during that period, what the settlements were for, or for the proposition that any of those settlements were reached based on merit or that it was substantially similar to the case at hand. *See generally Planned Parenthood Se., Inc. v. Strange*, 33 F. Supp. 3d 1381, 1384 (M.D. Ala. 2014). True, although inadmissible hearsay can sometimes be used by a nonmovant, the nonmovant must be still reduce the hearsay to an admissible format at trial. *See Macuba*, 193 F.3d at 1323-24. Problematically, the Eleventh Circuit highly disfavors nonmovants from using a

6

newspaper article's content for the truth of the matter asserted. *See, e.g.*, *Cull v. City of Orlando, Fla.*, 700 F. App'x 909, 913 (11th Cir. 2017).

Even more problematically, settlement agreements without admissions of liability cannot be considered for the purposes of showing a genuine or material factual dispute to sustain a *Monell* claim in the Eleventh Circuit. In fact, settlement agreements are not capable of putting a municipality on notice of an unconstitutional custom or policy at the motion to dismiss stage. *See Gonzalez v. City of Miami*, No. 1:22-CV-21587-KMM, 2023 WL 2030635, at *2 (S.D. Fla. Feb. 15, 2023) (Moore, J.) (concluding 15 settled cases do not put a City on notice of constitutional violations). And the Eleventh Circuit has made pellucid that "**settled or voluntarily dismissed [suits] do not, without admissions of liability, put [municipal entities] on notice of any pattern of constitutional violations.**" *Buckler v. Israel*, 680 F. App'x 831, 836 (11th Cir. 2017) (bolded text added). The Eleventh Circuit has echoed this principle in reported decisions as well. *See Simmons v. Bradshaw*, 879 F.3d 1157, 1168 (11th Cir. 2018) ("[**S**]**ettlement agreements are not competent evidence** that Sheriff Bradshaw condoned the actual use of excessive force [for a *Monell* claim]." (bolded text added)).

Settlements, after all, are "decided on the basis of negotiations, not findings of fact," and "[t]he considerations leading to a settlement are many and varied; at times they [even] have little to do with the basic facts of a case." *Kinan v. City of Brockton*, 876 F.2d 1029, 1034 (1st Cir. 1989). To suggest settlements could be used against a municipality would, therefore, disincentivize municipalities in the Eleventh Circuit from resolving constitutional cases through mediation— even the frivolous ones settled for nuisance fees—for fear that a future plaintiff might one day cite a no-fault settlement as *Monell* evidence.

In short, the mere existence of lawsuits and of no-fault settlements—no matter how many—cannot competently qualify as evidence for a genuine or material dispute of fact. *See Simmons*, 879 F.3d at 1168; *Buckler*, 680 F. App'x at 836. The Eleventh Circuit has made plain that the "number of complaints [or lawsuits] does not provide a City with notice of a policy or custom" meaning settled cases cannot put a City "on notice of any pattern of constitutional violations" without an at-fault designation attached to it. MSJ at 13-14 (citing *Brooks*, 813 F.2d at 1192–93, *Buckler*, 680 F. App'x at 836, and *Gonzalez*, 2023 WL 2030635 at *2).

This makes sense because settlement agreements cannot qualify as evidence of the underlying settled claims' "validity" without contravening the Federal Rules of Evidence. *See* Fed.

R. Evid. 408 (a). And, of course, the failure to prove underlying validity means a plaintiff has failed to show a municipality can be put on notice by virtue of that settlement. *Brooks*, 813 F.2d at 1193.

Nowhere in the record did the Plaintiff identify evidence of at-fault settlements or final judgments against the City or its officers. Nor did he identify any case in this Circuit that has found no-fault settlements or constitutional claims without a favorable final judgment capable of being considered on summary judgment. Worse, none of the actions that the Plaintiff identified have a final judgment against the City or its officers, as all either settled or resulted in a favorable ruling in the City's favor. *Compare* Chapman Report Appendix B [ECF No. 139-1] at 171-82*, with* Composite Exhibit A, Chart of Cases Cited by Plaintiff with Links to Related Orders.

The City alerted the Court of these issues in its Motion. And that argument comported with existing Eleventh Circuit precedent and the summary judgment standard. Even so, the Court rejected the City's argument as an improper attempt to weigh the evidence. Order at 14. Thus, the Court misapprehended the City's position or did not apply the governing law. *Vila*, 2005 WL 6104075, at *1; *Schmidt*, 2018 WL 6422705, at *2.

### iii.     The DOJ and Deliberate Indifference

*Third*, the Plaintiff relied on "a Department of Justice report from 2003" for the proposition that it shows "the Miami Police Department had a pattern of unlawful detentions." *See Buress*, 2023 WL 5608061, at *9. A plaintiff, however, must show a municipality exhibited deliberate indifference by failing to make corrections to a policy, practice, or custom that it knows creates a pattern of constitutional violations, not just that the policy/practice/custom is deficient. *See, e.g.*, *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. City of Miami, FL*, 637 F.3d 1178, 1189 (11th Cir. 2011) ("A plaintiff must present evidence not only that the municipality was on notice of a need to train but also that the municipality made a choice not to do so.").

In *Severe v. City of Miami*, **this Court held on summary judgment that the 2013 DOJ documents were "not relevant" to a *Monell* claim because "they detail[ed] violations from years prior" even though Mr. Severe had been shot "in 2015.**" No. 17-22153-CIV, 2019 WL 2603090, at *6 (S.D. Fla. June 25, 2019) (Gayles, J.) (bolded text added). This made sense—even for a 2015 shooting case—because "[t]he [DOJ] Report [on firearm usage] made no findings past 2011" and "no findings past 2013" within a related Memorandum of Understanding. *Id.* If the 2013 DOJ Report or related Memorandum of Understanding concerning firearm usage is "not relevant" in a 2015 shooting case under *Monell*, it could not create a genuine issue of material fact here—

an incident that transpired *after* Severe's incident and without a shooting. *See id.* This makes sense because a plaintiff ordinarily has the burden of identifying substantially similar incidents. *See Mercado*, 407 F.3d at 1162.

The Agreement between the DOJ and the City, moreover, unambiguously confirms that it was not intended to be used as evidence or as an admission by non-parties to the agreement in State or Federal court. *See generally* U.S. DEPARTMENT OF JUSTICE, *Miami Police Department-Agreement*, available at https://www.justice.gov/crt/case-document/miami-police-department-agreement at 2 (last accessed Mar. 7, 2025) ("The DOJ affirmatively acknowledges that the findings letter dated on or about July 9, 2013 *was not meant to satisfy the requirements of Sec 803(8) of either the Federal Rules of Evidence or the Florida Evidence Code for admission by non-parties* to this Agreement in a State or Federal court." (emphasis added)).

And this Court (twice) acknowledged that the City's entry into that Agreement with the DOJ following the Report and Memorandum of Understanding did not qualify as an admission of misconduct or as any waiver to relevance in future actions. *See Severe*, 2019 WL 2603090, at *6 n.10 (explaining a March 10, 2016 agreement between the DOJ and the City states the DOJ "affirmatively acknowledges that the findings letter dated on or about July 9, 2013, was *not* meant to satisfy the requirements of Sec. 803(8) of either the Federal Rules of Evidence or the Florida Evidence Code for admission by non-parties to this Agreement in State or Federal Court" (internal quotation marks omitted & emphasis added)); *Picardat v. City of Miami*, No. 15-CV-24305, 2017 WL 1251897, at *7 (S.D. Fla. Apr. 5, 2017) (Gayles, J.) (same). In fact, the Agreement further cements that the City never admitted that the City, its officers, or employees engaged in anything unconstitutional or illegal, and it could not be used as evidence of other "improper activities or conduct." *Severe*, 2019 WL 2603090, at *6 n.10; *see also* 2016 Agreement at 2. Given that this Court found the DOJ documents too remote for a 2015 shooting, the City submits that the Plaintiff could not invoke it within the context of a case that arose later in time. *See Severe*, 2019 WL 2603090, at *6. This was never an argument about the weight of the evidence but one of what can qualify as genuine and material evidence on summary judgment, which is appropriate. *See* Fed. R. Civ. P. 56(c)(1)(B), (c)(2).

Plus, the mere existence of the DOJ letter cannot show deliberate indifference because the Plaintiff had to further show that the City chose to do nothing about it. *See Am. Fed'n of Lab*, 637

9

F.3d at 1189 ("A plaintiff must present evidence not only that the municipality was on notice of a need to train but also that the municipality made a choice not to do so.").

In a similar vein, the City pointed out that the Plaintiff's reliance on a 2003 Department of Justice investigation, which transpired pursuant to the invitation of "Mayor Manuel Diaz and Chief Raul Martinez" both of whom "separately requested a thorough investigation" in 2002 to improve the MPD, could not create a genuine issue of material fact. *See generally* Am. Compl. ¶ 60 (showing link available in Amended Complaint). This is because, in light of cases like *Severe*, the 2003 investigation could not have made any findings past 2003, rendering it irrelevant to the question of any policies or practices in 2017. *See Severe*, No. 2019 WL 2603090, at *6. And, as to this 2003 investigation, the City invited the DOJ to assist it in improving policing. *See generally* Am. Compl. ¶ 60 (showing link available in Amended Complaint). Thus, consistent with the City's argument, the Plaintiff could not show a genuine or material factual dispute for the deliberate indifference inquiry with that document, as it tended to prove the opposite. *See Am. Fed'n of Lab*, 637 F.3d at 1189. Worth mentioning, this Court has held that the City acted by creating and implementing revised policies that were at issue in 2003. *See Owaki v. City of Miami*, 491 F. Supp. 2d 1140, 1163 (S.D. Fla. 2007). Thus, consistent with this Court's ruling in *Owaki*, the 2003 policies/practices were revised and were not the same as those in 2017.

In short, even if the Plaintiff wished to use the DOJ Letter as evidence, it could not create a genuine and material dispute because the findings letter contained no findings close in time to the incident in question and the same agency agreed that the City had worked "diligently and effectively" to improve policing for all in the City of Miami. Thus, the Court misapprehend the City's position or otherwise overlooked governing and persuasive authority for the proposition that the Plaintiff could not rely on DOJ related materials to create a genuine or material dispute in this matter. *Vila*, 2005 WL 6104075, at *1; *Schmidt*, 2018 WL 6422705, at *2.

### iv.     After-the-Fact Evidence

***Fourth***, the Court stated it relied on "relevant police conduct from 2015 to 2018." *Buress*, 2023 WL 5608061, at *9. It is unclear what evidence of 2018 (or after) was deemed "relevant police conduct," *see id.*, because—as the City argued—such after-the-fact evidence does not create a genuine issue of material fact. Indeed, "the failure to investigate or take disciplinary action following [an] incident cannot support a claim of municipal liability, because the after-the-fact

inadequate investigation or discipline could not have been the legal cause of [a] plaintiff's injury." *Shehada*, 965 F.Supp.2d at 1374.

This makes sense because a City cannot be put on notice of a pre-existing policy, practice, or custom that could cause a constitutional violation if the circumstances for that notice transpire *after* the injury in question. *See Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015) ("The sheriff argues that the failure to investigate a single incident, of which the sheriff was unaware until after-the-fact, cannot ratify a constitutional violation. We agree."); *Pruitt v. Cote*, 6:12-CV-1038-ORL-28, 2012 WL 6212906, at *1 (M.D. Fla. Dec. 13, 2012) ("[T]he City's after-the-fact failure to discipline for the events at issue is irrelevant to whether a city policy or custom caused the underlying constitutional violations alleged.").

This Court has routinely reached the same conclusion. *See, e.g.*, *Feliciano v. City of Miami Beach*, 847 F. Supp. 2d 1359, 1367 (S.D. Fla. 2012) ("An inadequate investigation following the subject incident will not sustain a claim of municipal liability, because the after-the-fact inadequate investigation could not have been the legal cause of the plaintiff's injury."); *Clarke v. Phelan*, No. 16-25217-CV, 2018 WL 987260, at *9 (S.D. Fla. Feb. 20, 2018) (Scola, J.) (same).

The City identified several paragraphs in the Amended Complaint that were incapable of creating this causal link in its Motion. MSJ at 19 (citing Am. Compl. ¶¶ 58xiv., 58xv., 61xx., 61xxi., 61xxii., 61xxiii.). However, because the Court accepted 2018 conduct as "relevant," the City's argument was rejected as simply an attempt to weigh the evidence even though the City had argued that such evidence cannot create a genuine or material dispute on any issue. The Court, therefore, misapplied the governing law or misapprehended the City's arguments. *Vila*, 2005 WL 6104075, at *1; *Schmidt*, 2018 WL 6422705, at *2.

### *v.    The Lack of Comparator Evidence and the Number of Complaints*

The City argued that the Plaintiff lacked comparator evidence, illustrating the issues the Plaintiff had with creating a genuine issue of material fact. MSJ at 16-17. The Court did not address the City's concerns regarding comparator evidence. *Buress*, 2023 WL 5608061, at *9. Without comparators, or a meaningful way to make a comparison, the Plaintiff's assertion of a widespread or pervasive custom/practice could not create a genuine issue of material fact as the City argued. *See Denno*, 218 F.3d at 1278 (concluding the at-issue conduct was not attributable to the school board because the plaintiff never identified instances "of similar suspensions at other schools within the school district"); *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998) (rejecting

plaintiff's reliance on case statistics because "[t]here was no evidence regarding the reasons for these dispositions or that any such dispositions were due to false arrests for only protected speech" as he had alleged); *Adams v. Custer*, No. 14-CV-80403-CIV, 2016 WL 155081, at *1, *19 (S.D. Fla. Jan. 12, 2016) (Hurley, J.) ("Without some way of comparing [the plaintiff's allegations] to other similar-sized police departments, the Court cannot infer anything about the PBSO practices in the use of deadly force."). In its Motion, the City detailed explained that the Plaintiff's statistics confirmed only 5 complaints of false arrest were made in 2017, meaning it hardly showed a widespread problem. That argument was consistent with existing Eleventh Circuit precedent. And the City explained that one of the two identified comparators (i.e., New York City) had more than three times as many complaints for retaliatory arrest for the same period. MSJ at 16. Thus, the Plaintiff could not show a more pervasive problem compared to other cities. *See Denno*, 218 F.3d at 1278. As for the other comparator, New Orleans, the City argued that New Orleans did not have a categorization for "false arrest" or for a similar category compared to the City. MSJ at 16-17. Thus, New Orleans could not competently qualify as a comparator under the genuine and material standard. *See Denno*, 218 F.3d at 1278. The Court never addressed this argument and, therefore, did not apply the governing law.

### vi.      The Bar Incident

The Court also relied upon a bar incident involving Officer Verne, which transpired one year earlier, as evidence that the City failing to discipline him operated as evidence of a practice or custom of failing to discipline officers. *Buress*, 2023 WL 5608061, at *9. The City explained that Officer Verne was not disciplined for that incident—even though the Internal Affairs division recommended a 160-hour suspension—because the Police Chief believed *a Florida Statute made it unlawful for him and, thus, the City to do so*, specifically the Officer Bill of Rights under Section 112.532(6)(a), Florida Statutes. SMF ¶¶ 56, 67-69. Even though the Police Chief believed he could not enforce discipline because of the limitations period under that law, he gave Officer Verne an oral reprimand to advise him that his conduct was not consistent with what "is expected from a police officer" and that the bar incident "could have seriously affected his career." SMF ¶ 69. The major and the investigator assigned to Officer Verne's bar incident investigation were subsequently transferred from the Internal Affairs division, in part, because of their handling of that investigation. SMF ¶ 70. The Plaintiff did not dispute that the major and the investigator overseeing that investigation were disciplined as a result of their handling of that complaint. PSMF ¶ 70.

Further, the Police Chief testified that he typically accepts the recommendation for discipline from the Internal Affairs division unless he thought more discipline should be added for the offense. SMF ¶¶ 59-60. The Plaintiff also did not dispute this. PSMF ¶¶ 59-60 (disputing in part for clarification but not as to the substance). The Police Chief also testified that he rescinded recommendations for discipline no more than *five* times. SMF ¶ 64. The Plaintiff did not dispute this. PSMF ¶ 64. In situations like this, therefore, the reprimand stays in the officer's file and will not be expunged for potential progressive discipline. SMF ¶¶ 62-63, 66. The Plaintiff did not dispute that these files stay in the officer's personnel file or that progressive discipline is utilized in an appropriate case. PSMF ¶¶ 62, 66.

In other words, the undisputed record showed the Police Chief rescinded discipline no more than five times while he was the Police Chief—with one of those five times being Officer Verne's bar incident. In all other scenarios, he enforced discipline or escalated the recommended discipline. Case in point: the major and the investigator who handled the investigation of the bar incident were disciplined, in part, because of their handling and delay of that investigation. Viewed together, the City did not have any deliberate indifference to the bar incident or the risks that it could pose. *See Am. Fed'n of Lab.*, 637 F.3d at 1189 ("A plaintiff must present evidence not only that the municipality was on notice of a need to train [or other deficiency] but also that the municipality made a choice not to do so.").

Regardless, consistent with the City's arguments that the Plaintiff lacked evidence of substantially similar incidents having merit, the bar incident related to an off-duty application of force whereas the incident in this case involves allegations of false and retaliatory arrest while on-duty. *See Perez v. City of Sweetwater*, 770 F. App'x 967, 973 (11th Cir. 2019) (finding no substantial similarity where the incidents that were not considered "did not involve deadly force or high-speed vehicle pursuits" and the mere fact that a traffic incident was present was not sufficient), at 975 (finding no substantial similarity where the cited-to incidents did not show a pattern of unconstitutional pursuit of fleeing suspects and resulting constitutional violations).

In sum, the Court should not have relied on this incident as evidence that the City was on notice of the risk of a false or retaliatory arrest or otherwise that officers are not disciplined when they violate rules. Moreover, the Plaintiff did not identify any incidents where failure to discipline an officer earlier would have avoided a similar and meritorious constitutional violation. *See id.* (discussing the substantial similarity standard). The Court, in short, misapplied the governing law

or misapprehended the City's arguments by considering this incident capable of creating a genuine and material dispute. *See Vila*, 2005 WL 6104075, at *1; *Schmidt*, 2018 WL 6422705, at *2.

**B.      The Court stated that the City Engaged in Improper Weighing of the Evidence and, Therefore, Did Not Address the City's Argument on Summary Judgment.**

### i.      *No Discussion on Which Complaints Were Proven to Have Merit*

As previously stated, the Court relied on "twenty examples of complaints regarding" what it deemed "relevant police conduct from 2015 to 2018." *See Buress*, 2023 WL 5608061, at *9. But the Order has no findings that those complaints were proven to have merit. *See id.* To the extent the Court used the word "complaints" to mean internal affairs investigations, the Court overlooked the City's arguments that none of the grievances on which the Plaintiff relied were proven to have merit. The Court made this determination, assuming the City simply sought to weigh the evidence. *Buress*, 2023 WL 5608061, at *9. The City's MSJ makes plain that it never sought weighing of evidence but one that was consistent with Eleventh Circuit precedent as to what kinds of evidence is ineligible to create a genuine and material dispute because a plaintiff must prove each of the cited-to examples have merit. *See Brooks*, 813 F.2d at 1193; *Ludaway*, 245 F. App'x at 952. Reconsideration on this issue is appropriate because the Court misconstrued the City's argument and, whether due to this misapprehension or otherwise, applied an incorrect procedural and substantive analysis.

### ii.     *No Discussion on "Substantial" Similarity to the Case at Hand or the City's Arguments why the Complaints Failed to Create a Genuine Issue of Material Fact*

Additionally, the Court did not make a finding that the complaints were "*substantially* similar" to the case at hand—only that they were "similar." *See id.* Even if the Court meant to say they were substantially similar, it bears noting that the Court (and the Plaintiff) never explained why this was so. Regardless, the Court never specified *which* of the complaints were sufficiently similar for summary judgment purposes. *Buress*, 2023 WL 5608061, at *9. But the Court found all the circumstances cited in PSMF ¶¶ 74-93, 97-98 adequate for this purpose. *Id.* (citing PSMF ¶¶ 74-93; 97-98 in support).

If those are the paragraphs the Court considered, which represented the Plaintiff's *additional* facts section consistent with Local Rule 56.1(b)(2)(D), there is no indication in the Order showing the Court considered the City's corresponding paragraphs in its R-SMF as required by Local Rule 56.1(b)(3)(A)-(B).

The City believes that, had the Court evaluated the appropriate paragraph numbers in the R-SMF corresponding to those same paragraph numbers, the Court would have noted the aforementioned caselaw explaining unfounded complaints are "incapable of showing a policy or custom" consistent with *Brooks v. Sheib* and *Gonzalez v. City of Miami* plainly formed the City's *legal* argument for why those documents could not competently create a genuine or material issue of fact. *See* R-SMF ¶¶ 74-93 (citing those cases and objecting on this basis). Likewise on the issue of substantial similarity, the City alerted the Court that settlements cannot put a municipality on notice within another paragraph this Court considered, and the City warned the Court of the Plaintiff's legal errors by citing *Gonzalez v. City of Miami* and *Buckler v. Israel* with its objection/dispute. *See* R-SMF ¶ 97 (citing those cases and objecting on this basis). Also concerning substantial similarity, the City pointed out its legal dispute as to the Plaintiff's ability to create a genuine or material dispute using the 2003 DOJ documents by citing this Court's holdings in *Severe, Picardat,* and *Owaki* in R-SMF ¶ 98 (citing those cases and objecting on this basis).

The Order does not properly grapple with the City's evidence, its arguments, or the caselaw it cited concerning substantial similarity under *Mercado*. Nor does the Order show that the Court considered the ineligibility of certain kinds of evidence relied-upon by the Plaintiff. Had the Court addressed that caselaw, it would have led to other District Court and Eleventh Circuit cases standing for the same proposition. But there is no indication in the Order that the Court evaluated R-SMF ¶¶ 74-93 and 97-98. Rather than address those paragraphs which the City is required to do under Local Rule 56.1(b)(2)(C), the Court turned to completely different paragraph numbers within the City's SMF (i.e., R-SMF ¶¶ 41-49) for the proposition that the City simply sought weighing in its favor.

Equally erroneous, regarding the "twenty examples" of complaints, the Order cites paragraphs 74-93 and paragraphs 97-98 of the PSMF. *See Buress*, 2023 WL 5608061, at *9. But a review of the cited-to paragraphs makes clear that the Plaintiff's characterization of the factual record was erroneous, which, in turn, led this Court to err.

Largely, the Plaintiff argued the City did not investigate internal affairs complaints so the City could not deem them truly unfounded and mischaracterized Major Ibalmea's deposition to advance this argument. Major Ibalmea described a multi-tier review that transpires before a complaint of false or retaliatory arrest is made, which the Plaintiff omitted. Ibalmea's Dep [ECF No. 122-6] at 282:17-284:9. This review begins with the arresting officer (Tier 1), moves on to the

supervising sergeant (Tier 2), reviewed at another level by the commanding officer (i.e., lieutenant or commander) (Tier 3), and reviewed once more by the State Attorney's Office (Tier 4). *Id.* Afterwards, in the event an arrestee lodges a complaint of an unlawful/retaliatory arrest, the administrative sergeant reviews the complaint (Tier 5). Ibalmea's Dep [ECF No. 122-6] at 284:10-285:11. Another layer of review transpires after a complaint has been lodged; this time, by the commanding officer of Internal Affairs (Tier 6). *Id.* Afterwards, as Major Ibalmea made clear, it would review the complaint again if the State Attorney's Office or the Court alerted the City of a potential issue with probable cause, meaning another layer of review from the State Attorney's Office (Tier 7) with two additional layers of review from the Internal Affairs division consistent with Tiers 5 and 6 (Tier 8-9). *Id.*[3]

Even with the section of the deposition that the Plaintiff cited, it does not stand for the proposition that false and retaliatory arrest grievances are not reviewed. To illustrate, Major Ibalmea testified that a complaint regarding false or retaliatory arrest will be designated as a non-complaint ***only if*** the complainant's allegations relate "to the facts of the actual indictment" because at that juncture "either the court . . . has jurisdiction over the matter or the State Attorney's Office" does. Ibalmea's Dep [ECF No. 122-6] at 209:7-13, 210:17-211:13.

Thus, whether viewing that section of Major Ibalmea's cited-to testimony in isolation or in combination, **(1)** complaints of false or retaliatory arrest were always reviewed if there was *no* criminal case pending against the complainant regarding the underlying complaint **(2)** and—even for those with a pending criminal case related to the complained-of incident—reviewed *again* if the Court or State Attorney's Office alerted the City of an issue. Ibalmea's Dep [ECF No. 122-6] at 209:7-13, 210:17-211:13, 280:3-281:21, 282:19-285:11. Lastly, **(3)** Major Ibalmea testified that there were at least two additional layers of review that were provided (again) once a complaint came in (Tiers 5-6) even though three layers of review had been conducted by the City (Tiers 1-3).

In sum, that testimony demonstrates that a complaint will have undergone three layers (Tiers 1-3) of review before a complaint ever comes in, five layers of review from the City if a complaint is made (Tiers 1-3 and 5-6). This also means either seven to nine layers of review will be provided if the State Attorney's Office alerts the City that the arrest was unlawful at any stage (*either* Tiers 1-6 and 8 *or* Tiers 1-9).

---

[3] Major Ibalmea called this a five-layer review, but it resembles a nine-tier review. Ibalmea's Dep [ECF No. 122-6] at 282:17-285:11.

The Plaintiff might later argue that they are not relying on the number or complaints or on unfounded complaints. Response at 6-7. However, there is no material difference between the central theory of their case—that is, the investigation of complaints is inadequate so the City cannot say they are unfounded—and cases like *Brooks v. Sheib, Whitaker, or Ludaway,* especially because the Court and the Plaintiff never meaningfully distinguished that precedent. Further, because the paragraph numbers that the Court relied upon shows that it approved of the Plaintiff's argument that there is no investigation of complaints, and the R-SMF was not considered which would have shown each of the Plaintiff's characterizations of the record was false, the Court's analysis does not comport with the factual record either.

In any event, for the reasons stated earlier, the Plaintiff's efforts to hedge that they are not relying on unfounded complaints because they are arguing that the complaints were not properly investigated in the first place still does not overcome their burden on multiple respects. For example, the Plaintiff still (1) had to prove that the supposedly inadequately investigated complaint was true/meritorious, meaning not simply a conflict in the version of events, (2) that the City knew that the complaint had merit, and (3) prove that the meritorious complaint is substantially similar to the case at hand. Because the Court's analysis does not resolve these questions, and the Plaintiff's response never accomplishes this either because it takes as true all allegations in the complaint and discredits officer version of events along the way, the Order misapplied Eleventh Circuit precedent or otherwise misapprehended the City's position by reaching this conclusion.

### iii.      *Improper Reliance on Settlements and Lawsuits*

Again, the Court explicitly relied on the City "settling" cases in civil litigation without a finding that those settlements had an at-fault designation. *See Buress*, 2023 WL 5608061, at *9. The Court did not address Eleventh Circuit precedent (e.g., *Buckler v. Israel* or *Simmons v. Bradshaw*) deeming such "evidence" not qualifying as competent evidence capable of creating a genuine issue of material fact on summary judgment. Nor did it address the Plaintiff's improper attempts to rely on settlements to implicitly argue the underlying claims had merit, which is not permissible under the Federal Rules of Evidence. Relatedly, because the Court relied on the existence of lawsuits without an additional determination that those lawsuits resulted in a final judgment against the City or an officer, the Court's reliance on lawsuits effectively amounted to reliance on the number of complaints lodged against the City, which is not enough. *See Brooks*,

813 F.2d at 1193 ("[T]**he number of complaints bears no relation to their validity**." (bolded text added)); *see also Whitaker.*, 126 F. Supp. 3d at 1321 (same).

As such, the Court's reliance on settlements and lawsuits—without a determination that those lawsuits resulted in a final judgment or the settlements were designated as at-fault settlements—contravened Eleventh Circuit precedent. *See Simmons*, 879 F.3d at 1168; *Brooks*, 813 F.2d at 1193; *Buckler*, 680 F. App'x at 836. Otherwise, the Court misconstrued the City's argument by deeming them an attempt to weigh the evidence because the City sought to invalidate evidence on the basis that it was incapable of creating a genuine or material dispute under existing law.

#### iv.     The DOJ and Deliberate Indifference

The Court's reliance on the 2003 DOJ documents overlooked the City's arguments showing that the policies and procedures that were at issue then and later in time were revised. The City alerted this Court of holdings of this Court. And disputed the materiality of those materials as well. The Court did not consider the City's argument and, instead, reduced it to improper weighing. *See Buress*, 2023 WL 5608061, at *9. The Court, on this point, either misapprehended the City's position or otherwise reached a conclusion that does not comport with existing law.

Further, because the DOJ documents confirm the City initially invited the DOJ in 2003 and worked with the DOJ towards improving its police procedures, the DOJ related information cannot create a genuine or material dispute for the purposes of showing deliberate indifference. This aspect of the order requires reconsideration because the Court, due to the Plaintiff's mischaracterizations, misconstrued the City's position as simply weighing of evidence.

#### v. After-the-Fact "Evidence"

This makes sense because a City cannot be put on notice of a pre-existing policy, practice, or custom that could cause a constitutional violation if the circumstances for that notice transpire *after* the injury in question. *See Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015) ("The sheriff argues that the failure to investigate a single incident, of which the sheriff was unaware until after-the-fact, cannot ratify a constitutional violation. We agree."); *Pruitt v. Cote*, 6:12-CV-1038-ORL-28, 2012 WL 6212906, at *1 (M.D. Fla. Dec. 13, 2012) ("[T]he City's after-the-fact failure to discipline for the events at issue is irrelevant to whether a city policy or custom caused the underlying constitutional violations alleged.").

This Court has routinely concluded that after-the-fact evidence cannot be used for the purposes of establishing a policy, practice, or custom for *Monell* purposes. *See, e.g., Feliciano v.*

*City of Miami Beach*, 847 F. Supp. 2d 1359, 1367 (S.D. Fla. 2012) ("An inadequate investigation following the subject incident will not sustain a claim of municipal liability, because the after-the-fact inadequate investigation could not have been the legal cause of the plaintiff's injury."); *Clarke v. Phelan*, No. 16-25217-CV, 2018 WL 987260, at *9 (S.D. Fla. Feb. 20, 2018) (Scola, J.) (same). This is consistent with Eleventh Circuit precedent showing the kinds of evidence that cannot competently create a genuine or material issue of fact. *See Salvato*, 790 F.3d at 1295. The Court stated that it relied on evidence of events that transpired in "2018" even though the alleged constitutional injury occurred in December 2017. For this reason, the Court should reconsider its holding as to after-the-fact evidence because it does not comport with existing law. Alternatively, reconsideration on this matter is warranted because the Court rejected the City's argument by characterizing it as improper weighing when, in fact, the City did no such thing.

### vi. The Comparator Issues Did Not Appear in the Order Undermining Plaintiff's Theory.

The Court did not address the lack of comparator evidence, which undercut the Plaintiff's theory of a widespread and pervasive problem. *See generally* Order. Given the other facts and law that were not considered, and the City's position that was not correctly construed, the lack of comparator evidence capable of creating a genuine or material dispute should be considered in any reconsidered order.

### vii. The Bar Incident and the Evidence of Discipline Undercut Plaintiff's Theory.

The Court did not address the undisputed fact that the Police Chief did not discipline Officer Verne because of his belief that it would violate Florida law under the circumstances. Nor did the Court address the record evidence that the Police Chief ordinarily approved of recommended discipline with some instances escalating the penalty. Nor did the Court address the fact that Officer Verne's bar incident was one of five incidents where the Police Chief rescinded discipline or that the investigator and major who handled the investigation of this incident were reassigned as a result of their handling of this matter. The Court also did not address whether the bar incident was substantially similar to the case at hand or why it did not amount to an isolated instance in light of the very rare statistic the rescission of the recommended discipline represented.

Had the Court done so or considered the record cited by the parties, as stated above, it would have observed that the bar incident does not exhibit deliberate indifference. To the contrary, it shows discipline was meted to those who evidently failed to investigate this matter in a timelier

19

fashion. Nor could the bar incident have put the City on notice of a widespread problem because it is an isolated instance lacking substantial similarity to the case at hand.

**C.     Had the Court or the Plaintiff Addressed the City's Argument, the City Would Have Prevailed on Summary Judgment.**

Viewed together, because the Plaintiff could not permissibly rely on those forms of evidence for the purposes of competently creating a genuine issue of material fact, which is not the same thing as improper weighing of evidence, the City was entitled to summary judgment. Here, though, the Court misapprehended the City's arguments, overlooked the applicable and undisputed facts, and reached a result that is incongruent with Eleventh Circuit precedent and authority, including this Court's prior rulings. *See, e.g.*, *Clarke v. Phelan*, No. 16-25217-CV-RNS, 2018 WL 987260, at \*8-\*9 (S.D. Fla. Feb. 20, 2018) (Scola, J.) (granting summary judgment because (i) the underlying complaints were not proven to have merit, (ii) finding cited-to incidents were inadmissible hearsay because the validity could not be proven, (iii) for lack of substantial similarity, (iv) because nonmovant relied on after-the-fact evidence, and (v) the mere existence of prior complaints and investigations being insufficient).

**D.     Reconsideration Under Rule 54(b) is Proper Because There is No Just Reason to Obligate the City to Participate in a Trial When Summary Judgment Would Have Been Afforded But For the Plaintiff's Mischaracterization.**

Here, the error amounted to a manifest injustice because the Order makes findings that conflict with Eleventh Circuit caselaw and caselaw from this Court on a number of issues. It is also contrary to the U.S. Supreme Court's standard and that of the Federal Rules of Civil Procedure regarding summary judgment, which authorize a movant to assert and that a nonmovant lacks evidence capable of creating a genuine or material dispute. That approach, of course, is not the same thing as improper weighing of evidence. The Order also ignored the City's R-SMF on corresponding paragraphs, which would have shown the Plaintiff's additional facts section did not create a genuine or material dispute. Based on the Plaintiff's many mischaracterizations of law and fact, the City believes the Court misapprehended the City's position. *See Vila*, 2005 WL 6104075, at \*1. The Court should also reconsider its Order because it creates serious public policy concerns. Because of the Order, other municipalities may now be concerned whether they should settle cases for fear that those settlements might be used for future *Monell* evidence.

**WHEREFORE** the City of Miami humbly submits reconsideration of the Order should be granted, the Order should be vacated only as to its analysis concerning the City, and an order granting the City's Motion for Summary Judgment should issue.

## LOCAL RULE 7.1(a)(3)(A) COMPLIANCE

I hereby certify that all parties or non-parties who may be affected by the relief sought in the motion, in a good faith effort to resolve the issues raised in the motion, have been conferred with and further confirm, following correspondence via email and telephonic calls, that the Plaintiff opposes the requested relief in this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record or is otherwise served on *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing to the electronic or physical addresses on the docket.

By: */s/ Bryan E. Capdevila*
       Bryan E. Capdevila,
       Assistant City Attorney
       Florida Bar No. 119286