United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Hannibal Buress, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-23078-Civ-Scola |
| | ) |
| City of Miami, and others, | ) |
| Defendants. | ) |

**Order on Defendants' Motion to Bifurcate Trial**

This matter comes before the Court upon the Defendants' motion to bifurcate trial (ECF No. 198). The Plaintiff has filed a response (ECF No. 202), and the Defendants have filed a reply (ECF No. 211). The Court has considered the briefing, the record, the relevant legal authorities, and is otherwise fully advised. For the reasons that follow, the Court **denies** the Defendant's motion to bifurcate trial (**ECF No. 198**).

1. **Background**

The Plaintiff originally brought this case against Miami Police Department Officers Luis Verne and Elio Villegas, as well as the City of Miami, based on the Plaintiff's arrest in the Wynwood area of Miami on December 9, 2017. (Order Granting in Part and Denying in Part Defs.' Mots. for Summary Judgment, ECF No. 165 at 1-2.) The Court granted summary judgment in Villegas's favor, thus dismissing him from the suit. (*See generally id.*) The Court denied summary judgment as to Verne and the City of Miami. (*See generally id.*)

What remains in this lawsuit, then, are the claims against Verne and the City of Miami. Specifically, the Plaintiff brings four counts against Verne: two violations of 42 U.S.C. § 1983 for false arrest (Count I) and retaliatory arrest (Count 2), and two state common-law claims for malicious prosecution (Count 5) and false arrest (Count 6). (*Id.* at 1.) The Plaintiff also brings one count against the City of Miami, for an unlawful policy or procedure that allowed the violations of his civil rights under Section 1983 (Count 4, or the *Monell* claim). (*Id.*)

With the May 5, 2025 trial in this case fast approaching, the Defendants filed a motion to bifurcate the trial, believing that a joint trial against both the City and Verne would be prejudicial to Verne. (*See generally* Defs.' Mot.)

## 2. Legal Standard

As set forth in Federal Rule of Civil Procedure 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Rule 42(b) "confers broad discretion on the district court," permitting bifurcation when it furthers convenience. *Gilbert v. State Farm Mut. Auto. Ins. Co.*, 311 F.R.D. 685, 686 (M.D. Fla. 2015) (quoting *Harrington v. Cleburne Cty. Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001)); *see also Brown v. Toscano*, 630 F.Supp.2d 1342, 1345 (S.D. Fla. 2008) (Seltzer, J.) (quoting *Innovative Office Prods. v. Spaceco, Inc.*, No. 05–04037, 2006 WL 1340865, at *1 (E.D. Pa. 2006) (the decision of whether to bifurcate a trial is "subject to an informed discretion by the trial judge in each instance.")). "The predominant consideration is a fair and impartial trial 'through a balance of benefits and prejudice.'" *Gilbert*, 311 F.R.D. at 686 (quoting *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F.Supp.2d 1333, 1334 (M.D. Fla. 2006).) The party seeking bifurcation bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties. *Brown*, 630 F.Supp.2d at 1345 (internal quotations and citations omitted).

## 3. Analysis

The Defendants' primary argument that bifurcation is warranted is that evidence the Plaintiff seeks to introduce to support his *Monell* claim would be prejudicial as against Verne. For example, the Defendants note that the Plaintiff seeks to introduce Verne's employment and disciplinary file—which may not be admissible against Verne himself—as evidence to support his *Monell* claim against the City. (Defs.' Mot., at 13-14.) Moreover, the Plaintiff also plans to introduce other evidence that may support his *Monell* claim but that the Defendants contend would be prejudicial to Verne: "the Department of Justice Report on MPD, a Washington Post article purportedly showing City settlements for 'police misconduct,' City IA Quarterly Allegations from 2015-2018, 68 IA Complaint/Disciplines/Reports, 45 legal complaints filed against the City and 14 Settlement Agreement [sic] entered into by the City *without* admission of fault," as well as testimony by the Plaintiff's expert, Christopher Chapman. (*Id.* at 14.) The Defendants believe that such evidence "will prejudice Verne because there is substantial risk the jury will be inflamed by hearing the alleged wrongful acts the Plaintiff seeks to demonstrate through media reports, statistics, complaints, settlement agreements and newspaper articles and,

then, summarily conclude that Verne committed all of the allegations despite the *Monell* evidence having no bearing on his case." (*Id.* at 16.)

The Plaintiff disagrees because the claims against Verne include "an element of intent," and therefore the "evidence of the City's policies and practices are relevant to Plaintiff's claims against Defendant Verne." (Pl.'s Resp., at 3.) For example, the Plaintiff believes that "Verne's past misconduct will be used to show that Verne has a pattern of rapidly escalating interactions and abusing his police power—in other words, that any defense he might make of good faith or lack of intent are rebutted by his repeated past actions." (*Id.* at 4.)

Bifurcating *Monell* claims from claims against individual officers may "eliminate[] the potential unfair prejudice to an officer that can occur from the plaintiff's introduction of an officer's prior wrongful acts in order to establish a *Monell* claim." *Foltz v. City of Largo*, No. 8:10–cv–759–T–24–EAJ, 2011 WL 1690010, at *2 (M.D. Fla. May 3, 2011) (collecting cases). However, this is not a bright-line rule. For example, where a "City's policies and practices may have some relevance to the investigation carried out by the Individual Defendants," there may "be an overlap in this evidence," making bifurcation judicially inefficient. *Echavarria v. Roach*, Civil Action No. 16-cv-11118-ADB, 2022 WL 279609, at *1 (D. Mass. Jan. 31, 2022).

Such inefficiencies are at play here. As discussed above, the Plaintiff notes how his evidence against the City may also be relevant to establish Verne's intent. He also notes how evidence of Verne's past conduct might likewise be relevant in establishing Verne's intent, as well as the City's *Monell* liability. The Plaintiff also expects to have Chapman testify on matters relevant to his claims against both defendants. Thus, here, "bifurcation would instead generate inefficiencies by requiring the parties to present the same witnesses and evidence in both trials." *Id.* The Defendants argue that bifurcating the trials would not be inefficient because a trial on the Plaintiff's *Monell* claim can begin the day after the Plaintiff's trial on his claim against Verne (should Verne be held liable). (Defs.' Reply, at 7.) That may be true, depending on the Court's schedule. However, such scheduling would not vitiate the need for the same witnesses to re-testify, and some of the same evidence to be re-presented. These witnesses would have to wait until the close of evidence on the Plaintiff's claims against Verne, jury deliberations on those claims, and then the selection of a new jury. While bifurcating some cases including *Monell* claims may be efficient, this is not one such case.

The potential prejudicial effect of some evidence that the Defendants cite in their papers does not outweigh these potential inefficiencies. Based on the Court's experience, jurors are more than capable of appropriately applying the

Court's limiting instructions. Based on the record, the Court does not see the number and type of limiting instructions becoming burdensome and confusing for a jury. Thus, the Court is confident that its limiting instructions, with input from counsel, will eliminate the prejudicial effect, if any, of evidence presented at trial.

### 4. Conclusion

For the foregoing reasons, the Court **denies** the Defendants' motion to bifurcate trial (**ECF No. 198**).

**Done and ordered** in Miami, Florida on March 28, 2025.

_____
Robert N. Scola, Jr.
United States District Judge