United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Hannibal Buress, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-23078-Civ-Scola |
| | ) | |
| City of Miami, and others, | ) | |
| Defendants. | ) | |

### Order on Defendant City of Miami and Plaintiff's Motions for Reconsideration

This matter comes before the Court upon the Defendant City of Miami's motion for reconsideration of the Court's denial of its motion for summary judgment (ECF No. 201). The Plaintiff has filed a response (ECF No. 210), and the City of Miami has filed a reply (ECF No. 222). The Court also held oral argument on the motion on April 15, 2025. The Court has considered the briefing, the record, the relevant legal authorities, and is otherwise fully advised. As the Court explained in its April 16, 2025 order (ECF No. 234), the Court **granted** the Defendant City of Miami's motion for reconsideration (**ECF No. 201**). Because the Court is granting the City's motion and dismissing it from the case, the Court **denied as moot** the City's motion *in limine* (**ECF No. 149**) and its *Daubert* motion (**ECF No. 150**). This order explains in full the Court's reasoning.

Moreover, the Court also **denies** Buress's motion for reconsideration or to certify the order for interlocutory appeal (**ECF No. 256**) to the extent that it asks for reconsideration of this order. The parties should still fully brief Buress's motion to certify the order for interlocutory appeal, which remains pending, consistent with the Court's normal briefing schedule.

1. **Background**

The Court recounts the relevant factual and procedural background below and incorporates the detailed factual background of its original order on the Defendants' motions for summary judgment. (Order on Motions for Summary Judgment ("Order on MSJs"), ECF No. 165, at 1-3.)

**A. Factual Background**

The Plaintiff, Hannibal Buress, is a well-known stand-up comedian who brought this case against two Miami Police Department ("MPD") Officers, Luis Verne and Elio Villegas, and the City of Miami, for violations of his civil rights under both federal and Florida law based on an incident in the Wynwood area of Miami on December 9, 2017. Specifically, Buress brought four claims against Officer Verne: two violations of 42 U.S.C. § 1983 ("Section 1983") for false arrest (Count 1) and retaliatory arrest (Count 2), and two state common-law claims for malicious prosecution (Count 5) and false arrest (Count 6). (Am. Compl. ¶¶ 62-73, 88-102, ECF No. 26.) He also brought one claim for violation of Section 1983 for failure to intervene against Officer Villegas (Count 3), and one claim against the City of Miami itself (Count 4) for an unlawful policy or procedure that allowed the violations of his civil rights under Section 1983 (the "*Monell*" claim). (*Id.* ¶¶ 74-87.)

### B. Procedural Background

On August 30, 2023, the Court granted in part and denied in part the Defendants' motions for summary judgment. The Court granted Villegas's motion for summary judgment and dismissed him from the suit. (Order on MSJs, at 12.) The Court, however, denied Officer Verne's motion for summary judgment on the issue of qualified immunity and the City of Miami's motion for summary judgment on Buress's *Monell* claim. (*Id.* at 5-12, 13-15.) The Court denied the City of Miami's motion for summary judgment on Buress's *Monell* claim because it concluded that "a Department of Justice report from 2003 finding that the Miami Police Department had a pattern of unlawful detentions, twenty examples of complaints regarding relevant police conduct from 2015 to 2018, and evidence of the City settling similar claims in civil litigation" created genuine issues of material fact on the presence of an unlawful policy or custom. (*Id.* at 14.) The Court also found triable issues on the issue of deliberate indifference, concluding that there was evidence that "the City as a rule does not investigate false arrests unless accompanied by some other misconduct allegation." (*Id.* at 14-15.)

Officer Verne appealed the Court's order with respect to the claims against him to the Eleventh Circuit on September 1, 2023. (Notice of Interlocutory Appeal, ECF No. 168.) That same day, the Court stayed the case pending the appeal. (Paperless Order Staying Case, Sept. 1, 2023). On September 23, 2024, the Eleventh Circuit affirmed the Court's denial of Officer Verne's motion for summary judgment. (Mandate of Eleventh Circuit, ECF No. 183.) The Court then lifted the stay on October 4, 2024. (Order Reopening Case, ECF No. 190.)

On March 7, 2025, the City filed its motion for reconsideration of the part of the Court's order denying the City's motion for summary judgment. The City believes that the Court misunderstood the City's arguments on summary judgment and as a result considered evidence that "did not qualify as 'material' and could not create a 'genuine' dispute because precedent has explicitly found those categories of 'evidence' improper on summary judgment and at trial[.]" (Def.'s Mot., at 3.)

**2. Legal Background**

**A. Summary Judgment Standard**

Under Fed. R. Civ. P. 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving

party." *Id. at 1260*. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Where video evidence is in the record, a court can only use the recording to "disregard the non-moving party's version of events" if it "so utterly discredits" the party's story "that no reasonable jury could have believed" that party. *Brooks v. Miller*, No. 21-10590, 2023 WL 5355022, *6 (11th Cir. Aug. 22, 2023) (quoting *Scott*, 550 U.S. at 380).

### B. Motion for Reconsideration Under Fed. R. Civ. 54(b)

Fed. R. Civ. P. 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Thus, under Fed. R. Civ. 54(b), a district court has "plenary authority 'to reconsider, revise, alter or amend' a non-final order before the entry of final judgment." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F. 4th 1367, 1379—80 (11th Cir. 2024) (citations omitted). Despite having this "plenary authority," district courts "in most instances . . . should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution." *Id.* at 1380.

Whether to grant a motion to reconsider an interlocutory order under Rule 54(b) is within a district court's discretion. *See id.* at 1381 (explaining that Eleventh Circuit reviews such decisions for "abuse of discretion). For example, "[i]f the movant is able to meet a significantly higher showing for reconsideration—for example, the standard applicable to Rules 59(e) or 60(b), or the exceptions to the mandate rule—the district court should not hesitate to revisit its prior ruling." *Id.* But even if a motion for reconsideration does not meet such standards, a district court may still grant a motion under 54(b) in appropriate circumstances. *Id.* District courts should "consider[] both the weight of the moving party's arguments and the disruption that a change would cause in light of the time that has passed since the decision was initially made." *Id.*

Finally, under Fed. R. Civ. P. 59(e) and 60(b), reconsideration is appropriate where "the Court has patently misunderstood a party, where there is an intervening change in controlling law or the facts of a case, or where there is manifest injustice." *See Vila v. Padron*, No. 04-20520, 2005 WL 6104075, at *1 (S.D. Fla. Mar. 31, 2005) (Altonaga, J.). Though "[f]ederal courts have struggled to define the phrase 'manifest injustice' . . . several have relied upon

the Black's Law Dictionary which states that it is 'an error in the trial court that is direct, obvious, and observable [,]. . . patently unfair' and 'apparent to the point of being indisputable." *Schmidt v. Wash. Newspaper Publ'g Co.., LLC*, No. 18-80614-CIV, 2018 WL 6422705, at *2 (S.D. Fla. Dec. 6, 2018) (Reinhart, M.J.) (citations omitted).

### 3. Analysis

Given the standards discussed above, the Court has considered the parties' arguments, the passage of time, and the prejudice to both parties given the possible outcomes on the City's motion. However, after reviewing the record, it is obvious to the Court that it originally misunderstood the City's arguments; more importantly, and at the very least, granting the City's motion for reconsideration would prevent manifest injustice.

### A. The Relevant Law Under *Monell v. Dep't of Social Services of the City of New York*

As the Court explained in its prior order, "[t]o demonstrate municipal liability [under *Monell*, 436 U.S. 658 (1977)], Buress must show (1) that his constitutional rights were violated; (2) that the City of Miami had a practice or custom that constituted deliberate indifference to that constitutional right; and (3) that the custom caused the violation." (Order on MSJs, at 13 (citations omitted).) "[A] plaintiff may establish a policy or custom exists by showing a 'persistent and wide-spread practice' and the government's actual or constructive knowledge of that practice." (*Id.* (citation omitted). "[R]andom acts or isolated incidents are insufficient to establish a custom or policy." (*Id.* (citation omitted). "For example, even where a municipality provides rules and regulations for the operation of its police department, if those rules are repeatedly violated and the municipality has knowledge of the conduct but fails to rectify the situation then it may be liable." (*Id.* (citation omitted).) "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." (*Id.* at 13-14 (citation omitted).)

### B. The Evidence the Court Considered in Denying Summary Judgment

Before the Court discusses the parties' arguments, the Court must first make clear the evidence it considered in finding triable issues on element (2) of municipal liability. The Court relied on five pieces of evidence: (1) a Department of Justice ("DOJ") Report from 2003; (2) twenty complaints regarding police misconduct from 2015 to 2018; (3) the City's purported policy of not investigating false arrests "unless accompanied by some other misconduct;" (4) the City's settling of similar claims; and (5) a prior incident involving Officer Verne that went unpunished. (*Id.* at 14-15.) The City believes that the Court's consideration of each of these pieces of evidence was in error.

### C.  Whether the City Waived Any of its Arguments

Buress believes that the City waived various of its arguments by failing to raise them in its motion for summary judgment. (*See generally* Pl.'s Resp.)

Generally, "any arguments the party failed to raise in the earlier motion will be deemed waived." *Vila*, 2005 WL 6104075, at *1 (citation omitted). However, courts have found that they may consider what is technically a waived or forfeited argument "where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding[.]" *See Mhany Mgmt. v. Cnty. of Nassau*, 819 F.3d 581, 615 (2d Cir. 2016) (citing cases).

This is one of those cases. For the most part, the City's motion presents pure questions of law that, when considered, warrant dismissal of the sole claim against it. Therefore, manifest injustice to the City would occur should the Court not consider its arguments. *See Schmidt*, 2018 WL 6422705, at *2.

In any event, the City did not waive or forfeit any of the arguments it now makes. In its motion for summary judgment, the City argued that Buress "has no evidence to prove that any of [the complaints] had merit, so [Buress] could never show a genuine issue of material fact to prove the City had notice of a problem based on the number of complaints or even the contents therein." (Def.'s Mot. for Summary Judgment, ECF No. 124, at 12).) The City also objected to the materiality of the 2003 DOJ report. (*See id.* at 15-16.) Likewise, the City objected to the use of the bar incident involving Officer Verne as evidence supporting municipal liability. (*Id.* at 16-18.) And in its reply in support of its motion for summary judgment, the City objected to the use of settled cases and its purported policy of not properly investigating Internal Affairs ("IA") complaints. (*See, e.g.*, Def.'s Reply in Support of Mot. for Summary Judgment, ECF No. 145, at 4, 5-6.)

While the City's articulation of its arguments on its motion for reconsideration may be slightly different, the thrust of the City's arguments

can be found in its original papers. The City has not waived or forfeited any of its arguments.

### D. Whether the Court Properly Considered the Evidence

The Court takes each piece of evidence in turn.

1. Complaints Against the City

The City first believes that the Court should not have relied on twenty examples of complaints against the City as support for Buress's *Monell* claim. (Def.'s Mot. for Reconsideration, at 2-3.) In his response to the City's motion for summary judgment, Buress argues that "the City was on notice of these multiple incidents but failed to take any action to remedy these violations." (Pl.'s Resp. to MSJ, at 4.)

Whether past complaints can support a *Monell* claim rests on whether the plaintiff shows that those complaints have merit. In *Brooks v. Scheib*, the Eleventh Circuit reversed judgment for the plaintiff on his *Monell* claim because the plaintiff "never demonstrated that past complaints of police misconduct had any merit. Indeed, the number of complaints bears no relation to their validity." *Brooks*, 813 F.2d 1191, 1193 (11th Cir. 1987). In *Whitaker v. Miami-Dade*, Judge Lenard applied this "merit" requirement when dismissing a *Monell* claim, finding that the "Plaintiffs d[id] not allege that these other shootings were deemed unjustified, unconstitutional, or were anything other than legitimate, self-defense shootings." *Whitaker*, 126 F.Supp. 3d 1313, 1321 (S.D. Fla. 2015) (relying on *Brooks*).

In *Clarke v. Phelan*, this Court granted summary judgment to the City defendant on the plaintiff's *Monell* claim. *See* 2018 WL 987260 (S.D. Fla. Feb. 20, 2018). In doing so, the Court held that the plaintiff "has offered no further evidence beyond the existence of prior complaints, and her argument that the investigations undertaken were insufficient, to establish a custom or policy." *Id.* at *8. The Court continued that the plaintiff "presented no evidence to indicate that the City was aware of past police misconduct—especially because there is no evidence in the record with respect to the merits of the other complaints and investigations." *Id.* at *8 (citing *Brooks*, 813 F.2d at 1193).

Buress fails to point to evidence in the record that shows that the complaints he relies on have merit. Buress contends that "many of the complaints Plaintiff relies upon are not just one-sided narratives, but instead descriptions of officer/community member interactions that include summaries of officer body camera footage and sometimes, officer interviews." (Pl.'s Resp. to MSJ, at 8.) He asserts that "[d]uring a false arrest, IA

investigators will include a narrative describing the arrest and detention from the officer's perspective and/or body camera footage," and that "[t]hese descriptions—often in the officer's own words—describe unlawful arrests and detentions." (*Id.*; *see also id.* at n.3 (footnote purporting to show that the complaints had merit).)

At oral argument, counsel for Buress explained that Buress would be entering the prior complaints into evidence through his police practices expert, Christopher Chapman. (*See* Ex. A, Draft Tr. 17:23-24("We have the settlements and the complaints and then our expert's review.").) Additionally, Buress plans to demonstrate the merit of the at-issue complaints merely by introducing the written complaints into the record, rather than using live testimony or body camera footage. (*See id.* 17:3-6 ("Plaintiffs claim that is enough in the complaint itself that it could be deemed meritorious to put the City on notice.").) But allowing Buress to prove that the complaints are meritorious simply through introducing the complaints themselves would be an end-run around the merit requirement. Buress must have evidence beyond the complaints themselves to demonstrate their merit. *See Brooks*, 813 F.2d at 1193 ("Brooks never demonstrated that past complaints of police misconduct had any merit."); *Clarke*, 2018 WL 987260, at *8 ("Clarke has presented no evidence to indicate that the City was aware of past police misconduct—especially because *there is no evidence in the record with respect to the merits of the other complaints and investigations*." (emphasis added)); *Rockemore v. Tobin*, 2019 WL 2203118, at *8 (M.D. Ga. May 21, 2019) (explaining that a plaintiff must present *at least some evidence . . . that the complaints were meritorious*"). But he does not have such evidence.

Therefore, the Court erred when it relied upon past complaints in denying the City's motion for summary judgment.

> 2. <u>The City's purported policy of not investigating false arrests "unless accompanied by some other misconduct"</u>

Next, the City takes issue with the Court's reliance on the testimony of its 30(b)(6) representative, Major Ibalmea. (Def.'s Mot. for Reconsideration, at 15.) When finding a triable issue on deliberate indifference, the Court noted that Buress "points to the City's designee on the police department's disciplinary process testifying that the City as a rule does not investigate false arrests unless accompanied by some other misconduct allegation." (Order on MSJs, at 14-15.)

"Under *Monell*, a policy may be inferred from circumstantial proof that a municipality displayed a deliberate indifference to the constitutional rights of

an individual . . . by a repeated failure to make any meaningful investigation into multiple complaints of constitutional violations after receiving notice." *Lozman v. City of Riviera Beach*, 39 F.Supp.3d 1392, 1408 (S.D. Fla. 2014) (Hurley, J.) (citation omitted). Under such a *Monell* theory, "the logical inference" is "that the municipality encouraged, or at least condoned, a course of unconstitutional activity by failing to deter or eliminate it." *Id.*

Buress argues that "[t]o the extent the MPD has failed to sustain any complaints alleging false or retaliatory arrest, it is because the MPD refuses—as a matter of custom and practice and in violation of the law—to even investigate allegations of false arrest." (Pl.'s Resp. to MSJ, at 6; *see also* Pl.'s Resp. to Def.'s Mot. for Reconsideration, at 11).) Thus, to Buress, "[t]hat failure cannot exonerate the City; indeed, it is further evidence of the City's deliberate indifference." (*Id.*) Buress repeats this argument in his response to the City's motion for reconsideration. (Pl.'s Resp. to Def.'s MSJ, at 11.)

For support, Buress cites Major Ibalmea's deposition. Major Ibalmea was asked if the "practice is that complaints that come into [Internal Affairs] alleging either false arrest or retaliatory arrest are immediately coded as non-complaints." (Ibalmea Dep. Tr. 209:23-210:2, ECF No. 122-6.) He responded, "[s]o once we determine that the allegation of the actual complainant has to do with the facts of that incident as it relates to the arrest, then that is correct; *it will be categorized as a non-complaint.*" (*Id.* 210:5-9 (emphasis added).)

Upon re-review of Major Ibalmea's deposition transcript, the Court agrees with the City that his testimony does not support a finding of deliberate indifference. The context of Major Ibalmea's testimony is critical. His testimony is with respect to cases in which there is an open investigation by the State Attorney's Office or there is an open case in front of a court. (*See id.*; *see also id.* 210:10-15 ("And if the State Attorney's Office or the court that has jurisdiction over the matter brings to our attention that there is a situation involving either false arrest or what you referred as retaliatory, then, at that point, an investigation will be open.").)

Thus, it is not accurate to say that the City, or the MPD, had a policy or custom in 2017 of ignoring false arrest claims. Taking Major Ibalmea at his word, which Buress asks the Court to do, at any point, a case with an issue of false arrest is investigated by some sort of government entity. Buress points out that Major Ibalmea testified that he "could not recall one instance in which the MPD investigated an allegation of a false or retaliatory arrest at the request of a court of the State's Attorney." (Pl.'s Resp. to Def.'s MSJ, at 14; *see also* Ibalmea Dep. Tr. 211:15-21.) But that's not what the deposition transcript says, and nor does it support a finding that there was a policy for purposes of *Monell*. Major Ibalmea was asked whether he was "aware of any instance of the

State's Attorney or the court has brought to the Internal Affairs' attention an incident of a false or a retaliatory arrest[.]" (Ibalmea Dep. Tr. 15-19.) Major Ibalmea responded that "[n]ot off the top of my head." A reasonable jury would not be able to find that a representative's statement that he could not recall instances "off the top of [his] head" as support of a *Monell* claim. This is Buress's case. It was incumbent upon him to find instances where, for example, the State's Attorney or a court referred false arrest claims back to Internal Affairs, who then refused to investigate them. He did not. The City and MPD's policy of waiting for a referral by a court or State's Attorney with jurisdiction over a matter is objectively reasonable. Without more—which Buress does not show he has—Major Ibalmea's testimony does not support Buress's *Monell* claim.

Therefore, the Court erred in relying on Major Ibalmea's testimony as supporting Buress's *Monell* claim.

### 3. Cases Which the City Settled

The City also believes that the Court improperly "relied on 'evidence' of settled cases, which the Court said were 'similar' examples of 'civil litigation.'" (Def.'s Mot., at 7 (citing Order on MSJs, at 14).) The City argues that "settlement agreements without admissions of liability cannot be considered for the purposes of showing a genuine or material factual dispute to sustain a *Monell* claim in the Eleventh Circuit." (*Id.* at 8.)

The City is correct. In *Buckler v. Israel*, the Eleventh Circuit was explicit: "[t]hose suits that were settled or voluntarily dismissed do not, without admissions of liability, put [Broward County] on notice of any pattern of constitutional violations." *Buckler v. Israel*, 680 F. App'x 831, 836 (11th Cir. 2017). In *Simmons v. Bradshaw*, the Eleventh Circuit found that "the district court noted correctly that settlement agreements are not competent evidence that Sheriff Bradshaw condoned the actual use of excessive force." 879 F.3d 1157, 1168 (11th Cir. 2018). And finally, in *Gonzalez v. City of Miami*, Judge Moore explained that "[s]ettled cases do not put a municipality on 'notice of any pattern of constitutional violations.'" *Gonzalez*, Case No. 1:22-cv-21587-KMM, 2003 WL 2030635, at *2 (S.D. Fla. Feb. 14, 2023) (Moore, J.) (quoting *Buckler*, 680 F.App'x at 836). Buress neither attempts to distinguish these cases nor cites cases where courts or juries properly used no-fault settlements or judgments to support a *Monell* claim. (*See generally* Pl.'s Resp. to Def.'s MSJ; Pl.'s Resp. to Def.'s Mot. for Reconsideration.)

Nor does Buress point to at-fault settlements or final judgments against the City or its officers. In his response to the motion for summary judgment,

Buress states that "data compiled by the Washington Post indicates that from 2010-2020, the City of Miami paid out 40 settlements for false arrest claims and that 51% of those claims resulted from officers named in multiple complaints." (Pl.'s Resp. to Def.'s MSJ, at 7 (internal citations omitted).) Buress goes on to argue that "[t]he City was on notice that false arrest claims comprised a significant portion of the City's legal liability, yet, despite having been aware of these claims, the City made no changes to policy or practices related to false arrest." (*Id.* (internal citations omitted).) Buress essentially repeats this argument in his response to the motion for reconsideration. (*See, e.g.*, Pl.'s Resp. to Def.'s Mot. for Reconsideration, at 8 (citing "[e]vidence that the City had incurred substantial legal liability due to numerous other lawsuits involving similar allegations . . . .").) But Buress does not show or allege that these settlements include any admission of fault on the part of the City or MPD.

Therefore, the Court erred in considering evidence of past settled cases in its order denying the City's motion for summary judgment.

4. The 2003 DOJ Report

The City also argues that the Court erred in considering "a [DOJ] report from 2003 finding that the Miami Police Department had a pattern of unlawful detentions." (Order on MSJs, at 14; *see also* Def.'s Mot. for Reconsideration, at 8.) The Court agrees.

Buress argues that "[t]he other incidents that are substantially similar to Plaintiff's unlawful arrest, and the MPD policy failures and omission[s] solidly tie Plaintiff's allegations back to the DOJ's 2003 conclusion about unlawful detentions." (Pl.'s Resp. to MSJ at 10.) He continues that "[t]he fact that the DOJ investigation demonstrates that the City has operated a policy and practice of unlawful arrests and detentions for over 15 years is a feature of Plaintiff's case, not a bug." (*Id.*) Buress's counsel repeated that reasoning at oral argument. (*See* Ex. A, 19:13-16 ("[S]o something our expert opines on saying there were two issues in 2013 and 2003 that the DOJ identified that were not remedies by the time of this case.").)[1]

There are a few issues with that line of reasoning. First, it presupposes that the other pieces of evidence Buress cites support a *Monell* claim. But as the Court discusses above, they do not. And perhaps more importantly, the

---

[1] Buress's counsel did not explain the issue from 2013. In any event, an issue from 2013 does not create notice for purposes for a *Monell* claim stemming from 2017 without more connecting the two instances.

DOJ report itself only shows misconduct up to 2003, rather than a continuing policy for over fifteen years. In *Severe v. City of Miami*, Judge Gayles found, on summary judgment. that *2013* DOJ documents did not support a *Monell* claim based on a *2015* shooting. Judge Gayles explained:

> First, the Court finds that the Department of Justice documents are not relevant" because "they detail violations from years prior to Severe's shooting in 2015. The Report, which made no findings past 2011, concluded that the City failed to train on excessive force and, as a result, had seen an increase in police shootings during those years. The MOU, which made no findings past 2013, found that problems remained with the City's investigations and trainings at the end of 2013. Consequently, neither of the Department of Justice documents can be used as evidence of violations in 2015 without some other evidence tying them to that year. Severe's estate has offered no such evidence.

*Severe*, 2019 WL 2603090, at *6 (S.D. Fla. June 25, 2019) (Gayles, J.). Similarly, Buress does not have evidence tying the 2003 report to events in 2017. Judge Gayles's reason is even more convincing here, given that Buress's 2017 arrest occurred fourteen years after the 2003 DOJ report.

In arguing that the Court may consider the 2003 DOJ report, Buress relies on *Fisher v. Miami-Dade County*, in which a "plaintiff adequately stated custom of deliberate indifference where he alleged similar incidents occurring over a period starting 11 years before incident involving plaintiff." (Pl.'s Resp. to Def.'s MSJ at 10-11) (citing *Fisher*, 114 F.Supp.3d 1247 (S.D.Fla. 2015) (Huck, J.)). However, that case was on a motion to dismiss, and in that instance, the Plaintiff noted 117 inmate deaths from the year prior, and "20 specific instances in which County employees withheld necessary medical care from inmates, or provided insufficient medical care, resulting in severe injury or death to those inmates." *Fisher*, 114 F.Supp.3d at 1252. Unlike the plaintiff in *Fisher*, Buress fails to tie events in 2003 to those that transpired in 2017. Thus, Buress is incorrect that "[t]he DOJ investigation demonstrates that the City has operated a policy and practice of unlawful arrests and detentions for over 15 years." (Pl.'s Resp. to Def.'s MSJ, at 10.)

Therefore, the Court erred in considering the 2003 DOJ report in its order denying the City's motion for summary judgment.

5. <u>Inadequate Training and Supervision</u>

Lastly, the City takes issue with the Court's reliance on a bar incident involving Verne as evidence of the City's deliberate indifference. (*See* Order on MSJs, at 15.) Again, the City is correct.

Before reaching the bar incident, the Court must discuss Buress's failure-to-train/supervise theory generally. Buress claims that "the City failed to adequately train and supervise its officers in a manner that would end [the MPD's practice of unlawful detentions and arrests.]" (*Id.* at 11.) To Buress, "[a] jury could easily make the inference that as a direct result of these failures, [Buress] endured a false and retaliatory arrest at the hands of the Defendant Officers." (*Id.*)

But as Buress himself acknowledges, the "two essential elements necessary for a failure-to-train/supervise claim" are "(1) proof that Defendant had notice of materially similar allegations of past constitutional violations, and (2) proof that the alleged failure to train/supervise caused Plaintiffs' injuries." *Page v. O'Leary*, Case No. 20-CV-14460-CANNON/MCCABE, 2022 WL 18662712, at *6 (S.D. Fla. Nov. 3, 2022) (McCabe, J.); *see also* Pl.'s Resp. to MSJ at 11 (quoting *Page*). "To show 'deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and that the municipality made a deliberate choice not to take any action." *Page*, 2022 WL 18662712, at *5 (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (cleaned up)). "The Eleventh Circuit has repeatedly held that, without notice of a need to train or supervise in a particular area, a municipality cannot be liable as a matter of law under a Monell failure to train/supervise theory." *Id.* (citing, *inter alia*, *Gold*, 151 F.3d at 1350).

As the Court discussed above, Buress does not have proper evidence of similar past instances of misconduct by the City. Therefore, Buress does not have evidence supporting the first element of a failure-to-train/supervise claim: that the City was on "notice of materially similar allegations of past constitutional violations." *Page*, 2022 WL 18662712, at *6.

What the Court is left with is the one bar incident in which "Officer Verne attack[ed] a civilian for calling him a 'pig,'" which "went unpunished." (Order on MSJs, at 15.) The City believes that the record demonstrates that the City "did not discipline Officer Verne because of his belief that it would violate Florida law under the circumstances." (Def.'s Mot., at 19.) In its response to the City's motion for summary judgment, Buress disputes the City's version of events. (Pl.'s Resp. to MSJ, at 15.)

The Court need not wrestle with the record because, standing alone, this one singular incident prior to the at-issue incident does not prove that there was a custom or policy so pervasive that a reasonable jury could hold the City

liable under *Monell*. *See Bd. of Cnty. Comm'rs of Byrab Cnty. v. Brown*, 520 U.S. 397, 407-08 (1997) ("In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury.").

Therefore, upon the Court's reconsideration, Buress's attempt to hold the City accountable based on inadequate training/supervision also fails.

### E. Christopher Chapman's Report

In its order denying the City's motion for summary judgment, the Court "f[ound] that sufficient dispute regarding material facts exists even without the additional support of the Plaintiff's expert report [on the City's police practices], but notes that the Defendant City's argument that the Court should not consider the report because it is inadmissible is unpersuasive." (Order on MSJs, at 14 n.3.)

The City currently has a joint pending *Daubert* motion on Buress's police practices expert, Dr. Chapman. (Def.'s *Daubert* Mot., ECF No. 150.) The Court need not decide the merits of that motion with respect to the City, because Dr. Chapman's report relies almost exclusively on the evidence discussed above—which after reconsideration, the Court concludes cannot sustain Buress's *Monell* claim. Thus, while the Court need not decide that issue of the admissibility of Dr. Chapman's report, the report itself does not preclude summary judgment on Buress's *Monell* claim.

For example, on Buress's supervision and training theory, Dr. Chapman does not rely on meritorious, "materially similar allegations of past constitutional violations" to show how the City was on notice of its inadequate supervision and training. *See Page*, 2022 WL 18662712, at *6; *Brooks*, 813 F.2d at 1193; *see also* Pl.'s Resp. to Def.'s *Daubert* Mot., ECF No. 153, at 3-5. And similarly, on Buress's theory that that the MPD had a policy and practice of unlawful detentions and arrests, Dr. Chapman relied on Ibalmea's deposition testimony, "MPD training materials, a U.S. Department of Justice Investigation into MPD policy as well as internal affairs documents and complaints." (Pl.'s Resp. to Def.'s *Daubert* Mot., at 6.) But as the Court has already discussed, Ibalmea's deposition testimony, the DOJ report, and the internal complaints cannot sustain Buress's *Monell* claim. Buress does not cite other evidence—like meritorious complaints or final judgments showing the City was at fault—that shows that the City or MPD had a policy and practice of unlawful detentions

and arrests at the time of the at-issue incident. Without such evidence, Dr. Chapman's report does not move the needle on Buress's *Monell* claim.

In Buress's own motion for reconsideration of the Court's ruling granting the City's motion for reconsideration, Buress argues that Dr. Chapman "can rely on these materials even if the Court finds that the materials themselves are not separately admissible." (Pl.'s Mot. for Reconsideration, ECF No. 256, at 6.) Buress misunderstands the Court's concerns. The Court is not ruling on barriers to admissibility such as hearsay. Instead, the Court's ruling focuses on the materiality and relevance of the underlying evidence as a matter of law. For the reasons explained in detail in this order, Buress's evidence is immaterial and irrelevant—and an expert report that relies on such materials is neither reliable nor helpful to the jury. *See* Fed. R. Evid. 702 (a)-(d).  Therefore, the Court denies Buress's motion for reconsideration or to certify the order for interlocutory appeal (ECF No. 256) to the extent that it asks for reconsideration of this order.

Dr. Chapman's report does not preclude granting the City's motion for reconsideration.

### 4. Conclusion

The Court understands any frustration that Buress—and others—may feel now that the Court grants the City's motion for reconsideration and has dismissed the City from this case. This order does not mean that the City and MPD has perfect policies, training, and practices. Perhaps the City and MPD should do a thorough assessment to better those policies, training, and practices. However, the standard for *Monell* liability is high—"[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id.*

For the foregoing reasons, the Court **grants** the Defendant City of Miami's motion for reconsideration (**ECF No. 201**). Because the Court is granting the City's motion and dismissing it from the case, the Court **denies as moot** the City's motion *in limine* (**ECF No. 149**) and its *Daubert* motion (**ECF No. 150**).

  The Court also denies Buress's motion for reconsideration or to certify the order for interlocutory appeal (ECF No. 256) to the extent that it asks for reconsideration of this order. The parties should still fully brief Buress's motion to certify the order for interlocutory appeal, which remains pending.

  **Done and ordered** in Miami, Florida on April 28, 2025.

                  _____
                  Robert N. Scola, Jr.
                  United States District Judge