United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Hannibal Buress, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-23078-Civ-Scola |
| | ) | |
| City of Miami, and others, | ) | |
| Defendants. | ) | |

**Order Denying Motion to
Certify The Order for Interlocutory Appeal**

This matter is before the Court on the Plaintiff Hannibal Buress's motion for reconsideration or to certify the order for interlocutory appeal. (ECF No. 256.) Because the Court previously denied the motion to the extent it asked for the Court to reconsider its order granting the Defendant City of Miami's motion for reconsideration (Order on Mots. for Reconsideration, ECF No. 258), this order only discusses the motion to the extent it seeks an order certifying an interlocutory appeal. The City of Miami has responded (ECF No. 263), and Buress has replied (ECF No. 273). After careful consideration of the briefs, the record, and the relevant legal authorities, the Court **denies** the motion. (**ECF No. 256**.)

1. **Background**[1]

On August 30, 2023, the Court denied the City of Miami's motion for summary judgment. (Order on Mots. for Summary Judgment, ECF No. 165.) However, on April 29, 2025, upon reconsideration, the Court found that there were no triable issues of material fact as to whether the City was liable on a *Monell* claim. ((Order on Mots. for Reconsideration.) Specifically, the Court found that (1) complaints against the City; (2) the City's policy on investigating complaints; (3) settled cases; (4) a 2003 Department of Justice ("DOJ") report; and (5) the City's training and supervision could not support Buress's *Monell* claim against the City. (*See* Order on Mots. for Reconsideration, at 7-14.) The Court therefore dismissed the sole claim against the City. (*Id.* at 15.)

---

[1] For purposes of brevity and to avoid repetition, the Court refers the reader to the Court's order granting the City's motion for reconsideration. (*See* ECF No. 258.)

## 2. Legal Background

Under 28 U.S.C. § 1292(b), courts have "circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *See Swint v. Chambers Cnty Comm'n*, 514 U.S. 35, 46 (1995). In relevant part, Section 1292(b) provides that certification is appropriate where the district judge is "of the opinion that [an interlocutory] order [1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" *See* 28 U.S.C. § 1292(b); *see also Simpson v. Carolina Builders Corp.*, 222 F. App'x 924, 925 (11th Cir. 2007).

First, an interlocutory order involves a "controlling question of law" when it concerns "the meaning of a statutory or constitutional provision, regulation, or common law doctrine" or "an abstract legal issue" that the reviewing court "can decide quickly and cleanly without having to study the record.'" *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (quoting *Ahrenholz v. Brd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676–77 (7th Cir. 2000)). Second, there is "substantial ground for difference of opinion" when the movant identifies other courts that are not "in 'complete and unequivocal' agreement" as to the resolution of the controlling legal question. *See McFarlin*, 381 F.3d at 1258 (quoting *Burrell v. Brd. of Trs. of Ga. Mil. Coll.*, 970 F.2d 785, 788–89 (11th Cir. 1992)). Last, an interlocutory appeal will "materially advance" the case when "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *See McFarlin*, 381 F.3d at 1259.

## 3. Analysis

Buress fails to satisfy any of the three necessary prongs for certification under Section 1292(b). The Court takes each in turn.

### A. Whether There is a Controlling Question of Law

Buress identifies what he believes is the controlling question of law that merits interlocutory review: "what types of evidence a party may rely on to support a *Monell* claim." (Reply, at 3.) At the outset, this is not a "controlling question of law" in the context of Section 1292(b). Such a question is overly broad and therefore does not concern "the meaning of a statutory or constitutional provision, regulation, or common law doctrine" or "an abstract

legal issue" that the Eleventh Circuit "can decide quickly and cleanly without having to study the record." *Mediaset*, 2022 WL 1643835, at *2 (cleaned up).

Rather than seeking clarification on a controlling issue of law, Buress seeks appellate determination of "whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *McFarlin*, 381 F.3d at 1259. But that is "the antithesis of a proper [Section] 1292(b) appeal." *Id.*

For example, Buress believes that "whether a plaintiff may use internal affairs complaints, DOJ reports, and evidence stemming from a single incident to prove a *Monell* claim is subject to debate within and outside the [Eleventh] Circuit." (Reply, at 3.) But that is not the case. There is no doubt that a plaintiff may use such evidence in the right circumstances. However, Buress could not do so in the circumstances of his case, for the reasons discussed at length in the Court's order. (*See* Order on Mots. for Reconsideration.) The Court elaborates on this point in the next section.

### B. The Evidence the Court Considered in Denying Summary Judgment

Before the Court discusses the parties' arguments, the Court must first make clear the evidence it considered in finding triable issues on element (2) of municipal liability. The Court relied on five pieces of evidence: (1) a Department of Justice ("DOJ") Report from 2003; (2) twenty complaints regarding police misconduct from 2015 to 2018; (3) the City's purported policy of not investigating false arrests "unless accompanied by some other misconduct;" (4) the City's settling of similar claims; and (5) a prior incident involving Officer Verne that went unpunished. (*Id.* at 14-15.) The City believes that the Court's consideration of each of these pieces of evidence was in error.

### C. Whether There Are Substantiated Grounds for Differences of Opinion

1. Internal Complaints Against the City

First, Buress believes that the Court "relied on *Brooks [v. Scheib]* to find that [Buress] could not use the internal affairs complaints to support his *Monell* claim without evidence that the complaints were meritorious." (Reply, at 5 (citing *Brooks*, 813 F.2d 1191 (11th Cir. 1987).) According to Buress, "other courts in this Circuit have declined to extend the *Brooks* holding to complaints about police misconduct that were not fully investigated, as is the case here."

(*Id.* (citing *Glasscox v. City of Argo*, No. 2:15-cv-01487, 2020 WL 5658906 (N.D. Ala. Sept. 23, 2020); *Camberdella v. Palm Beach County Sheriff's Office*, No. 14-cv-81258, 2016 WL 8200464 (S.D. Fla. Oct. 17, 2016) (Middlebrooks, J.).)

However, Buress misunderstands the Court's order. The Court acknowledged that a *Monell* claim can be alternatively sustained "by a repeated failure to make any meaningful investigation into multiple complaints of constitutional violations after receiving notice." (Order on Mots. for Reconsideration, at 8-9 (citation omitted).) Such a failure would support a finding of deliberate indifference and does not require evidence that the complaints had merit. (*See id.*) However, the Court found that Buress did not show a triable issue on deliberate indifference. (*Id.*)

*Glasscox* and *Camberdella* demonstrate the type of evidence needed to support a finding of deliberate indifference in the context of unsubstantiated complaints. In *Glasscox*, the plaintiff had evidence that that the City failed to investigate the at-issue officer's background and did not fully investigate complaints against him despite concerns with his behavior. *See* 2020 WL 5658906, at *15. And in *Camberdella*, the plaintiffs proffered evidence that the results of the investigations were predetermined; an investigation determined that a shooting was justified even though an internal training manual admitted the opposite; and there was evidence of bias in the investigation of the at-issue incident. *See* 2016 WL 8200464, at *3.

In contrast, Buress's only evidence regarding deliberate indifference is the deposition of Major Ibalmea, which the Court explained at length does not create a triable issue. (Order on Mots. for Reconsideration, at 8-10.)

At bottom, Buress disagrees with how the Court applies the law on internal complaints to the facts of this case. That is his right. But that does not mean that there is a substantial ground for difference of opinion for purposes of Section 1292(b). And more importantly, that does not entitle Buress to interlocutory review.

2. The 2003 DOJ Report

Next, Buress believes that courts are split on "whether it is proper for a plaintiff to use a prior [DOJ] report in support of a *Monell* claim" if the DOJ report was released prior to the at-issue incident. (Reply, at 6.) Buress cites to cases in which courts allowed similar DOJ reports to support a *Monell* claim. (*See id.*) This reveals a fundamental issue with Buress's understanding of Section 1292(b): just because this Court did not allow the 2003 DOJ report to be used to support his *Monell* claim does not mean that this Court thinks that DOJ reports that predate an at-issue incident *can never* be used to support a

*Monell* claim. And relatedly, just because other courts have come out the other way when applying evidence to the law does not mean that there is a conflict for purposes of Section 1292(b). So, to begin with, Buress is incorrect that the Court held that DOJ reports predating an at-issue incident can never be used to support a *Monell* claim. Rather, the Court held that the specific DOJ report at issue did not support Buress's *Monell* claim.

Take the two cases that Buress cites in support of his attempt to show a split on the use of DOJ reports. In *Simpkins v. Boyd County Fiscal Court*, the DOJ report included an incident that took place *two months* before the at-issue incident and included incidents eerily similar to what happened to the plaintiff in that case. *See* No. 21-5477, 2022 WL 17748619, at *9-10 (6th Cir. Sept. 6, 2022). In *Totton v. City of Sacramento*, the California DOJ report was published the same year as the at-issue incident. *See* No. 2:20-cv-01152, 2022 WL 4387793 (E.D. Cal. Sept. 22, 2022).

The reports in those cases are markedly different than the report that Buress attempts to use to support his case. As the Court explained in its order, Buress attempts to use a 2003 DOJ report to support a *Monell* claim stemming from a 2017 incident—without tying "events in 2003 to those that transpired in 2017." (Order on Mots. for Reconsideration, at 12.) *Simpkins* and *Totton* do not represent a split on the law; rather, they represent the application of basic evidentiary law to different sets of facts.

### 3. Inadequate Training and Supervision

In its order, the Court explained that "one singular incident [involving Verne] prior to the at-issue incident does not prove that there was a custom or policy so pervasive that a reasonable jury could hold the City liable under *Monell*." (Order on Mots. for Reconsideration, at 13-14.) Buress believes that there is a split on the issue of whether "a single civil rights violation can give rise to municipal liability." (Reply, at 7.) However, the cases Buress cites do not show any split on this issue. Buress cites to *Board of County Commissioners v. Brown*, where the Supreme Court explained that it has not "foreclosed the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." 520 U.S. 378, 390 (1989) (citation omitted). But this case does not support Buress's blanket assertion that a single civil rights violation can support *Monell* liability. As the Supreme Court noted itself, the single violation must be accompanied by evidence that the municipality failed to train its officers. *See id.* Here, however, the Court found that Buress did not

have "proper evidence" to support such a finding. (Order on Mots. for Reconsideration, at 13-14.)

Likewise, in *Flores v. City of South Bend*, the Sixth Circuit explained that "[a] municipality can be held liable under a theory of failure to train if it has actual knowledge of a pattern of criminally reckless conduct and there is an obvious need to provide training to avert harm, even if the prior acts have yet to result in tragedy." 997 F.3d 725, 733-34 (6th Cir. 2021) (citations omitted). Thus, *Flores* contemplates past incidents ("prior acts") that lead to "actual knowledge" of incidents that require future training. *See id.* at 733. *Flores* explained that a failure-to-train theory for an incident resulting in death could be viable even if the *prior acts* did not result in death. *See id.* That is not what Buress contends happens here, and the Court has explained that "Buress does not have proper evidence of similar past instances of misconduct" that would put the City on notice that it was not properly training its officers. (Order on Mots. for Reconsideration, at 13 (citation omitted).)

Thus, Buress fails to show that there is a split on the relevant law.

### D. Whether an Interlocutory Appeal Would Materially Advance the Litigation

Even if Buress had met the other elements for an interlocutory appeal, such an appeal would not "materially advance" the litigation. *See McFarlin*, 381 F.3d at 1259. Buress cites a few cases in which "[o]ther courts have permitted interlocutory appeal on orders granting summary judgment of a *Monell* claim . . . ." (Reply, at 8 (citations omitted).) Those cases are distinguishable. In *Mwangangi v. Nielsen*, the defendants not subject to the at-issue dismissal order were already entitled to an interlocutory appeal on the district court's ruling on qualified immunity. *See* 536 F. Supp. 3d at 389. In *Marcelle v. City of Allentown*, "the entire case would be dismissed and there would be no need for a trial" if the appellate court "reach[ed] a different conclusion on the only remaining federal claim[.]" *Marcelle*, No. 07-cv-4376, 2010 WL 3606405, at *4 (E.D. Pa. Sept. 16, 2010). Here, however, there is neither another dispositive appeal pending (like in *Mwangangi*) nor would Buress's appeal, if successful, get rid of the case in its entirety (like in *Marcelle*). "Interlocutory review is generally disfavored for its piecemeal effect on cases." *Davis Graham & Stubbs, LLP v. Kapila*, Civil Action No. 18-60526-Civ-Scola, 2018 WL 3128974, at *2 (S.D. Fla. June 26, 2018) (citation omitted). Trial against Verne is set to proceed, and an appeal on the outcome of that trial is possible regardless of the outcome of the trial. Thus, allowing two appeals based on the same facts at different times is "piecemeal" and inefficient. *See id.* (citation omitted). It is

more efficient to proceed to trial on Buress's claims against Verne, and for appeals in this case to take place thereafter.

### 4. Conclusion

For the reasons above, the Court **denies** Buress's motion for interlocutory appeal (**ECF No. 256**). Within **seven days** of entry of this order, Buress and Verne shall submit a status report with a proposed scheduling order for trial.

**Done and ordered** in Miami, Florida on May 30, 2025.

Robert N. Scola, Jr.
United States District Judge